*Opposed*—None.

NEW JERSEY ASSOCIATION OF INDEPENDENT INSURANCE AGENTS, A NEW JERSEY CORPORATION, C. W. BOLLINGER CO., A NEW JERSEY CORPORATION, AND JOHN A. WINDOLF, PLAINTIFFS-RESPONDENTS, v. HOSPITAL SERVICE PLAN OF NEW JERSEY, A NEW JERSEY HOSPITAL SERVICE CORPORATION, MEDICAL-SURGICAL PLAN OF NEW JERSEY, A NEW JERSEY MEDICAL SERVICE CORPORATION, AND RICHARD C. McDONOUGH AS COMMISSIONER, DEPARTMENT OF INSURANCE OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued April 29, 1975—Decided July 23, 1975.

*Mr. Clyde A. Szuch* argued the cause for defendants-appellants Hospital Service Plan of New Jersey and Medical-Surgical Plan of New Jersey (*Mr. Szuch and Mr. Richard L. Plotkin,* on the brief; *Messrs. Pitney, Hardin & Kipp,* attorneys).

*Mr. Frank X. McDermott,* argued the cause for plaintiffs-respondents (*Mr. McDermott,* of counsel, *Mr. Hugh P. Francis,* on the brief; *Messrs. Apruzzese & McDermott,* attorneys).

A Statement in Lieu of Brief was filed for the Commissioner of the Department of Insurance (*Mr. Omer F. Brown, II,* Deputy Attorney General, of counsel, *Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

SULLIVAN, J. The Appellate Division, in an opinion reported at 128 *N. J. Super.* 472 (1974), held that the Hospital Service Plan of New Jersey and the Medical-Surgical Plan of New Jersey (hereinafter sometimes referred to as Blue Cross and Blue Shield, or the Plans) were not given the power or authority in the respective statutes under which they operate to write a particular group student accident insurance policy, the issuance of which allegedly had been authorized by the Commissioner of the Department of Insurance, State of New Jersey.[1]

The Appellate Division also held that to construe the statutes as authorizing the issuance of such student accident insurance by Blue Cross and Blue Shield would deny insurance companies that write similar indemnity accident insurance equal protection of the laws in violation of our Federal and State Constitutions since Blue Cross and Blue Shield are not subject to the requirements of capital and

---

[1] The procedural background of this case is somewhat irregular. Plaintiffs filed suit in the Chancery Division against, *inter alia,* the Commissioner charging that if the Commissioner has made a determination that the Plans are permitted to enter in the field of student accident insurance, such determination should be declared to be illegal and void. The trial court expressed some doubt about the Chancery Division suit being the appropriate means for challenging the legality of the Commissioner's actions. See: *R.* 2:2–3 (a)(2).

However, it proceeded to decide the issue and entered a partial summary judgment in favor of the Plans holding that they had legal power under their charters and applicable statutes to enter into the proposed form of contract, which it found had been approved by the Commissioner, "for coverage of students in any public school system or private school which subscribes to the Contract." We pass the irregularity in order to reach the merits.

assets imposed on insurance companies and enjoy an exemption from taxation not granted to insurance companies. Blue Cross and Blue Shield have appealed as of right. *R.* 2:2–1(a). For reasons hereinafter set forth we reverse.

Blue Cross and Blue Shield, organized respectively under *N. J. S. A.* 17:48–1 *et seq.* and *N. J. S. A.* 17:48A–1 *et seq.*, are non-profit hospital and medical organizations serving in the broad field of health care. Both Plans are authorized to provide service benefits but also include indemnity payments as a matter of course in specified circumstances.

The Appellate Division held that the Plans, under their enabling statutes, were limited to the furnishing of service benefits, and that the question presented was whether looking at the proposed student accident policy as a whole, service rather than indemnity was its principal object and purpose. The Appellate Division reviewed the proposed student accident policy and found that, except for its excess features, it in no way differed from the usual accident policy issued by an ordinary insurance company, in that it was a contract to pay a sum of money upon the happening of a particular event or contingency.[2]

We find this analysis to be an oversimplification of the function of the proposed student accident policy in the overall picture. The record indicates that 92% of all students in this State are already insured under some form of health coverage. The proposed student policy would complement such underlying insurance and provide additional

---

[2] Although not provided for in the proposed policy, literature distributed by the Plans in connection with such policy mentions an optional accidental death and dismemberment cash benefit at additional cost to be issued by Germantown Insurance Company in conjunction wtih the student accident policy. However, the Commissioner's letter of April 27, 1972 does not refer to this feature nor did the trial court pass upon it. The Appellate Division correctly noted, 128 *N. J. Super.* at 474 n. 3, that "the judgment below did not involve that issue and it is therefore not before us."

coverage of substantially the same risks[3] but on an excess basis, over and above the basic coverage. However, the proposed policy coverage is limited to accidental bodily injury and is school oriented. Hospital and other non-medical health care benefits are in the form of indemnity payments to the student's parents or guardian; while payment for medical benefits ordinarily is made directly to the physician in those instances where the physician is a participant in the Blue Shield program.

As to the estimated 8% of the student population who will receive primary coverage under the proposed policy, these students will be insured against substantially the same risks as under basic Blue Cross-Blue Shield insurance, but the coverage will be school oriented and restricted to accidental bodily injury.

██ We agree with the Appellate Division that Blue Cross and Blue Shield are limited by their enabling statutes to the providing of essentially service benefits in the area of health care. However, a student accident policy, so oriented and effective on an excess basis where there is existing health coverage, would complement the Plans' primary operations and would be clearly within the scope of the statutory authorization.

We do not understand that the Commissioner has given his approval to the particular benefits offered in the proposed student accident policy. His letter of April 27, 1972 merely approves the concept of Blue Cross-Blue Shield, as part of permitted activity in the health care field, to provide non-duplicative student accident insurance coverage on a service benefit basis. It is obvious that this letter was not intended to be an approval of the proposed contract filed with the Department. The letter plainly indicates a future study

---

[3]Medical benefits under the proposed student policy are broader than provided by basic Blue Shield.

and analysis of the nature of the benefits "which the Plans may offer."

The Commissioner stated that the nature of the benefits proposed to be offered in the student accident policy must be consistent with the statutory and philosophical objectives of the Plans and that this would be the basis of the Department's analysis of contract forms and rates. He added that an important consideration is that the coverage be essentially in the form of service benefits and not deliberately duplicative of other health coverage.

The proposed policy which is the subject of this case offers 15 specified benefits. Items 1 through 9 cover hospital services, drugs, professional ambulance service, private duty nursing services, prosthetic devices, physiotherapist services, orthopedic appliances, blood processing and dental services. These benefits are provided on a reimbursement or indemnity basis. Items 10 through 15 cover services by a physician, surgical services, administration of anesthesia, x-ray and laboratory examinations by a physician, physical therapy by a physician, and drugs, medicine or medical supplies administered or used in a physician's office or by a physician. Payment for these benefits ordinarily is made directly to the physician if he is a participant in the Blue Shield program, otherwise payment is made to the student's parents or guardian on an indemnity basis.

All of the foregoing benefits are well within the scope of Blue Cross-Blue Shield legislatively authorized activity. While any coverage offered by the Plans must be essentially in the form of service benefits, where certain services and items are incidental to service benefits, indemnification may be permissible. This is so as to items such as drugs, private ambulance service, prosthetic devices and orthopedic appliances, which are incidental to the service aspects of the Plans, and which may be purchased or contracted for more efficiently or on a more satisfactory basis, than by the Plans. The economics of the situation would justify indemnity as

to such items. On the other hand, benefits such as hospital services, blood processing, dental services and medical services by a physician can only be provided on the basis of a service plan, at least where member or inter-plan hospitals, or participating professionals are involved.

In short, we agree with the Commissioner that the proposed student accident insurance coverage is a legitimate activity for the Plans under existing statutes. However, the Commissioner should review the particular benefits offered under the proposed policy to the end that they be restricted essentially to service benefits. He should disapprove of any benefits now proposed on an indemnity basis which he concludes fall within the service benefit area.

Our holding that the Plans, subject to the restrictions heretofore noted, may enter the field of student accident insurance is not to be taken as an approval of the contract in other respects, or of the schedule of rates filed. This is the continuing responsibility of the Commissioner under *N. J. S. A.* 17:48–8 and 9; *N. J. S. A.* 17:48A–9 and –10.

We do not agree with the Appellate Division's conclusion that to construe the statutes under which the Plans operate so as to permit them to offer the student accident insurance in question would deny other insurance companies that write accident insurance policies equal protection of the laws. As heretofore noted, the type of coverage involved is almost entirely on an excess basis and the benefits offered must be restricted essentially to service benefits. Moreover, while the Plans are not subject to the capital and asset requirements imposed on insurance companies, *N. J. S. A.* 17:7–6 and –7, and are exempted from taxation, *N. J. S. A.* 17:48–18 and *N. J. S. A.* 17:48A–24, they are nonprofit organizations operating in the area of health care and clearly benefiting the public interest. They provide, in the main, service benefits only and, so, do not compete with the commercial insurance companies. Thus a reasonable basis exists for their separate classification and the different legislative treatment given them. They are given exemption

from taxes because of their non-profit public interest status. Rather than require them to maintain large financial reserves, thereby increasing the cost of benefits provided, the Legislature provided for the financial integrity of the Plans by requiring that they contract with an adequate number of providers of health care. These providers serve as a substitute for the capital and assets required of regular insurance companies.

The separate legislative treatment afforded the Plans is clearly justified and in no way denies commercial insurance companies equal protection of the laws.

The judgment of the Appellate Division is reversed and the matter remanded to the Commissioner of Insurance for further proceedings in conformity with this opinion.

CONFORD, P. J. A. D., Temporarily Assigned (dissenting). The Court agrees with the Appellate Division that Blue Cross and Blue Shield "are limited by their enabling statutes to the providing of essentially *service* benefits in the area of health care" (emphasis mine), but nevertheless holds that the proposed student accident policy, although found by the Appellate Division to be essentially a contract for indemnity rather than service, is for the most part properly susceptible of approval by the Commissioner of Insurance.

This Court in both *Group Health Ins. of N. J. v. Howell*, 40 *N. J.* 436, 451 (1963), and *Group Health Ins. of N. J. v. Howell*, 43 *N. J.* 104 (1964), recognized that the statutes under which these Plans are organized and operate contemplate that they will function basically to provide subscribers with pre-paid health care and medical *services* rather than money indemnification for hospital or medical *expenses* incurred by the subscriber. It is only because the Plans contract in advance with the providers of these services for their rendition that the Legislature has deemed it financially safe for them to be permitted to operate without substantial capital paid in, as would be required in the case of a standard insurance company contracting for indemnification for medical expenses. See 43 *N. J.* at 114.

It must be conceded that the statute governing medical service corporations, *N. J. S. A.* 17:48A–1 *et seq.,* as distinguished from that as to hospital service corporations, *N. J. S. A.* 17:48–1 *et seq.,* permits the plan to make payments directly to subscribers (as, *e. g.,* when the physician providing the service is not a participating physician of the plan). That variation from the strict service concept in the case of medical services was undoubtedly provided for because not all physicians in any given area choose to participate in such a plan[1] and the Legislature nevertheless desired subscribers to have freedom of choice in selecting physicians. But no such authority for a *hospital plan* to make payments directly to a subscriber can be found in the statute controlling such corporations. The opinions in the two *Howell* cases, *supra,* were, accordingly, and still are sound in their insistence that the basic operating scheme of such corporations must be founded on rendition of service rather than money indemnity to subscribers. Erosion of that concept by permitting such corporations to issue policies containing money indemnity benefits without express legislative authorization inevitably risks that financial insecurity of these organizations which the Legislature intended to avert by the service concept it built into the enabling legislation.

I am in full agreement with the conclusions in the perceptive opinion of the Appellate Division finding most of the benefits in the proposed student accident policy here proposed to be in the nature of indemnities rather than services. The majority opinion concedes that nine of the fifteen specified benefits are payable solely on an indemnity basis. But it would validate the contract as to four of those nine items on the ground that they may be contracted for by the subscribers "more efficiently", etc. than by the plans

---

[1] It is nevertheless contemplated that a substantial number of physicians in the service area must be members of a hospital plan before it will be permitted to operate. See the second *Howell* case, *supra,* 43 *N. J.* at 114.

and are "incidental to the primary purposes of the Plans." This I submit is an example of the erosion of the legislative policy to which I referred above — in which I decline to join.

Whether or not a contract for the other six items, all related directly or indirectly to services by a physician, legally may, as here provided, be placed on an indemnification basis if rendered by a non-participating physician, or where the subscriber has already paid the physician, I need not here decide. What was before the lower courts, and what is before us, is a proposed insurance contract as an entirety. As presented, it contains numerous provisions which are incontestably contracts for indemnity not permitted by the enabling legislation. It is therefore invalid. I do not regard it as appropriate for the Court to launder this contract for impurities where there is no assurance that the Plans will want to issue a contract as revised by the Court. The contract as submitted was properly held *ullra vires* by the Appellate Division.[2] We should affirm that judgment.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN and SCHREIBER—5.

*For affirmance*—Judge CONFORD—1.

---

[2] I do not reach the question of equal protection which was the second ground of the decision in the Appellate Division.