139 N.J. Super. 394 (1976)
354 A.2d 331
MARIE SNEDEKER, CLAIMANT-RESPONDENT,
v.
BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, RESPONDENT-RESPONDENT, AND GIMBEL BROTHERS, INC., RESPONDENT, AND STORE WORKERS SECURITY PLAN, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 29, 1975.
Decided February 19, 1976.
*397 Before Judges ALLCORN, KOLE and GAULKIN.
Messrs. Checki and Politan, attorneys for respondent-appellant Store Workers Security Plan (Mr. Nicholas H. Politan, on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent Board of Review (Mr. Michael S. Bokar, Deputy Attorney General, of counsel; Mr. Jeffrey P. Blumstein, Deputy Attorney General, on the brief).
No brief was filed on behalf of respondent Gimbel Brothers, Inc.
No brief was filed on behalf of claimant-respondent Marie Snedeker.
The opinion of the court was delivered by KOLE, J.A.D.
Marie Snedeker (claimant) was employed by Leinoff Associates, an employer covered by the State Temporary Disability Benefits Plan (State Plan), from February 28, 1972 to March 29, 1973 at a salary of $150 a week plus expenses. Concurrent with this employment she worked three nights a week and Saturdays as a salesgirl at Gimbel Brothers, Inc. (Gimbel), a private plan employer associated with the Store Workers Security Plan (Store Plan) at a salary of $52.43 a week.[1] On March 29, 1973 she worked *398 for Leinoff Associates during the day and for Gimbel at night. The next morning, March 30, 1973, she suffered a pulmonary embolism and was not able to return to work until September 4, 1973.
Claimant applied to the State Plan for disability benefits under the Temporary Disability Benefits Law (the act), N.J.S.A. 43:21-25 et seq., with respect to her employment with Leinoff Associates, and received $81 in weekly benefits from March 30, 1973 to May 17, 1973, a total of $567. At the same time she applied to Gimbel for the payment of benefits under the Store Plan and received $34 a week in benefits from March 30, 1973 to September 3, 1973.
Meanwhile, on May 22, 1973 the Division of Unemployment and Temporary Disability Insurance of the Department of Labor and Industry (the Division) notified claimant that she was not entitled to any benefits from the State Plan, since her period of disability had commenced while she was covered under a private plan. It stated that "[we] shall refer your claim to your employer's insurance carrier for refund of benefits erroneously paid by the State Plan."
Claimant filed an appeal with the Division respecting the $34 a week disability benefits paid her by Gimbel through the Store Plan. A hearing was held before a Private Plan hearing officer for the Division's Board of Review. He determined that she was in concurrent employment during some part of the day preceding the commencement of her disability and that "[as] one of the two employers had a Private Plan, she is eligible for benefits under that plan at $81.00 a week, the amount she would receive if covered only under the State Plan." He held that Store Plan was required to pay her $81 a week for disability benefits from March 30 to September *399 3, 1973 and in effect directed Store Plan to reimburse the State Plan for the $567 paid her by the latter plan. Store Plan appeals.
The Board relied on N.J.A.C. 12:18-2.10(c) in determining that Store Plan alone was required to pay claimant benefits equivalent to those to which she would have been entitled had all her employment been covered under the State Plan.
N.J.A.C. 12:18-2.10(c) provides:
If an employee is in concurrent employment with two or more employers of whom only one has a private plan, under which such employee is covered, then the employee shall be eligible to receive, under such private plan, benefits not less than he would be eligible to receive if covered only under the State plan with respect to all employment, and no benefits shall be payable under the State plan for disability commencing while he is covered under such private plan.
Store Plan appears to make no claim that the regulation here involved is not authorized by statute. However, the State has addressed itself to this issue. We do likewise, since it is essential to a determination of the constitutional challenge raised by Store Plan.
We have concluded that there is such authority, both in the general power given to the Division to enact rules and regulations to administer statutes subject to its control, N.J.S.A. 43:21-11, and in the provisions of N.J.S.A. 43:21-33 and N.J.S.A. 43:21-37.
N.J.S.A. 43:21-33 provides that a covered individual "shall not be entitled to any benefits from the State disability benefits fund with respect to any period of disability commencing while he is covered under an approved private plan." N.J.S.A. 43:21-37 grants disability benefits under the State Plan to any "covered individual who on the date of the commencement of a period of disability is not entitled to disability benefits under an approved private plan * * *." It is thus evident that the Legislature intended that an employee covered by a private plan while disabled *400 should not be permitted to obtain benefits from the State Plan.
Additionally, other provisions of the act make it plain that the right to have private plans approved by the Division is an option expressly left to employers and employees under the circumstances outlined in the statute. However, the statute is framed to provide that the exercise of such option would in no wise interfere with the integrity and solvency of the state fund from which payments must be made to those who participate in the State Plan. Indeed, while recognizing that private plans may have advantages and appeal to many employers and employees, the act emphasizes the role of the State Plan and the necessity of keeping it properly funded and free from the hazard of adverse risks. See, e.g., N.J.S.A. 43:21-26; 43:21-32; 43:21-35; 43:21-46.
The purpose of the act is to protect New Jersey workers against loss of income caused by nonemployment-related accident or sickness. See Butler v. Bakelite Co., 32 N.J. 154, 160-162 (1960).
It provides that all employers covered by its provisions are automatically included within a State Plan. It establishes a state disability benefits fund, financed by both employer and employee contributions, out of which all benefit payments are made. Pursuant to the act, however, an employer, at his option, may establish a private plan for the payment of the required disability benefits in lieu of State Plan benefits. Benefits under a private plan may be provided by a contract of insurance issued by a duly licensed insurer, an agreement between an employer or a group of employers and a union or association representing employees, or a specific undertaking of the employer as a self-insurer. Any such private plan must be approved by the Division and have disability benefits and requirements for eligibility therefor at least equivalent to those under the State plan.
*401 From the foregoing it is apparent that the regulation here challenged, N.J.A.C. 12:18-2.10(c), approved in 1949 (soon after the act was enacted in 1948), furthers the legislative intent that an employee covered by a private plan, while so covered, should not be entitled to any benefits from the State Plan fund.[2]
A review of the legislative history of the act supports the conclusion we have reached.[3]
That history indicates that the act is a compromise between those favoring private plan arrangements and those concerned with the unequal and uncertain application of the then existing voluntary private plans for cash sickness benefits. Eventually the present statute, similar to the so-called "California Plan," was adopted, permitting employers the choice of entering into state-approved private plans or, in the event that choice was not made, of automatically being included in the State Plan funded by both employer and employee contributions. While generally an employee covered by a private plan was not required to contribute to the state fund, provision was made to assess private plan employers in the event the state fund showed an accumulated deficit in the amount set forth in the statute, N.J.S.A. 43:21-46(b), as originally enacted in 1948. See, also, the *402 later amendment requiring assessments against "all" employers rather than only private plan employers, L. 1970, c. 324, § 2. The statutory design was to permit the existence of state-approved private plans, while assuring the continued economic viability of the State Plan fund and the payment of benefits to private plan employees at least equivalent to those they would receive under the State Plan. The Legislature prohibited payment from the State Plan fund to any employee whose period of disability commenced while he was covered under a private plan.
The regulation here challenged fills the legislatively authorized gap by protecting both the State Plan fund and the private plan employee, who, by statute, is precluded from obtaining State plan benefits, where, as here, at the time of disability he is employed concurrently by a private plan and State Plan employer.
Moreover, the administrative interpretation of N.J.S.A. 43:21-33 and 43:21-37, adopted in N.J.A.C. 12: 18-2.10(c), has been in existence since 1949 without change. The act itself has been subject to numerous amendments since that date. Neither of the statutory provisions here involved have been changed. Such a contemporaneous and long-standing construction of the act by the agency charged with its enforcement is entitled to substantial weight and properly may be considered as expressing the legislative purpose. It is a reasonable interpretation that is consistent with our view of the Legislature's intent. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291 (1968); Pringle v. N.J. Dept. of Civil Service, 45 N.J. 329 (1965); State v. Le Vien, 44 N.J. 323 (1965); Harper v. N.J. Mfrs. Cas. Ins. Co., 1 N.J. 93 (1948); Slegers-Forbes, Inc. v. N.J. Hwy. Auth., 123 N.J. Super. 291, 293 (App. Div. 1973), certif. den. 63 N.J. 425 (1973), cert. den. 414 U.S. 1065, 94 S.Ct. 572, 38 L.Ed.2d 470 (1973).
Store Plan attacks the regulation as a violation of its right to due process and equal protection of the laws under the Fourteenth Amendment to the United States Constitution. *403 It claims that the regulation invidiously discriminates against it. To require it to pay the entire $81 a week to a part-time employee such as claimant, it is contended, unjustly enriches the State Plan to the financial detriment of the private plan.
We find these claims of unconstitutionality to be without merit.
A statute, or an authorized regulation thereunder, such as that with which we are concerned, does not violate due process or equal protection as long as the classification or discriminatory treatment effected thereby has some reasonable basis, is fairly related to a legitimate legislative purpose, and may be justified upon any state of facts reasonably conceived. Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); Pleasure Bay Apts. v. Long Branch, 66 N.J. 79 (1974); Borland v. Bayonne Hospital, 122 N.J. Super. 387 (Ch. Div. 1973), aff'd 136 N.J. Super. 60 (App. Div. 1975), appeal pending in Supreme Court. See also, Jiminez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); State v. Fearick, 69 N.J. 32 (1976); Troy Hills v. Parsippany-Troy Hills Tp. Council, 68 N.J. 604 (1975); Hutton Park Gardens v. West Orange Town Council, 68 N.J. 543 (1975).
Where there is a reasonable basis for treating the public plan  i.e., the State Plan  differently from a private commercial plan, any incidental detriment to the private plan resulting therefrom is insufficient to constitute arbitrary discrimination against it or a violation of its rights, either as a matter of due process or equal protection. See N.J. Ass'n, Independent Ins. Agents v. Hospital Service Plan of N.J., 68 N.J. 213 (1975); Borland v. Bayonne Hospital, supra.
Applying these criteria, the difference in treatment by the instant regulation of the State Plan, on the one hand, and Store Plan and other private plans, on the other, does not violate either constitutional provision.
*404 The provisions of the act, its purpose and its history, which we have discussed, demonstrate that the State Plan and private plans are not within a class requiring similar treatment. It also plainly supports the conclusion that the regulation, requiring the private plan to absorb the full cost of benefits where the disabled employee is then in concurrent employment with a State plan employer, is reasonably related to an appropriate legislative purpose.
The State Plan fund was created by the Legislature and is administered directly by the Division. Private plans, however, exist as an option granted by the act to employers, subject to legislative conditions and provisions and approval by the Division. Basically, they are administered by commercial entities. The State could have preempted the entire area of disability benefits. It did not do so, but instead permitted the private plan option, provided that the State Plan fund would not be affected adversely thereby and the employees under a private plan would be paid minimum State Plan benefits. By exercising the option Store Plan undertook the concomitant responsibility of assuring such minimum benefits to its employees who, by statute, are forbidden to receive State Plan benefits. That is precisely the situation here, where there is concurrent employment with private and State Plan employers when the disability occurs. The challenged regulation effectively fulfills and is reasonably related to the legislative goals of providing such minimum benefits and preserving the assets of the State Plan fund.[4]
*405 We do not agree with Store Plan that there is a constitutional infirmity in the regulation requiring it to pay the entire $81 a week to claimant from its trust fund despite its only having received contributions in proportion to claimant's part-time employment. The claimed unjust enrichment of the State Plan fund and Leinoff Associates, claimant's full-time employer, as well as other State Plan employers,[5] by reason of the regulation in and of itself does not adversely affect Store Plan or private plan employers. Thus, there is no denial of any constitutional right for that reason. It may be true that Store Plan employers contribute to its private trust fund amounts arrived at by collective bargaining negotiations with unions and that contributions and benefits predicated on part-time employment are less than those based on full-time employment under its plan. It may also be true that the regulation places on the private plan the financial burden of paying full minimum state-mandated benefits to a disabled part-time employee who is then in concurrent employment with a State Plan employer. But in view of the purpose and provisions of the act we have set forth, that is a burden reasonably imposed on those who elect the option to provide a private plan. A private plan such as Store Plan could have considered the impact of this regulation, adopted in 1949, in determining the rate of contributions to be made to its plan so as to minimize that burden. Store Plan has not shown that the regulation or its application is arbitrary, unreasonable or without an appropriate legislative objective.
Affirmed.
ALLCORN, J.A.D. (dissenting).
Under the determination by the majority of the court, when an individual worker holds two jobs simultaneously, each with a different employer, *406 one of whom provides temporary disability insurance coverage under the State plan and the other of whom provides coverage under a private plan, and that worker becomes disabled and is prevented from working as a result of non-occupational illness or injury, the private plan is liable for the payment of the whole of the benefits otherwise payable by the State plan. The State plan pays nothing.
The State plan here has been paid the contributions assessed against the petitioner and assessed against her employer according to the appropriate rates, and based upon petitioner's weekly salary of $150 for her full-time employment with Leinoff Associates. The private plan, in turn, has been similarly paid the contributions arising out of petitioner's part-time employment with Gimbel Brothers, based upon her weekly wages of $52.43. Instead of apportioning liability for the benefits payable between the State plan and the private plan in proportion to the wages paid by the respective employers, or upon some other equitable basis, the New Jersey Division of Employment Security by administrative fiat [N.J.A.C. 12:18-2.10(c)] has shifted to and foisted upon the private plan the entire liability of the State plan  the State plan at the same time pocketing and retaining all of the contributions assessed by it against both employee and employer.
The cited administrative regulation and the highly discriminatory treatment and inequitable results that flow from its application are said to carry out the legislative intent as expressed in the provisions of N.J.S.A. 43:21-33 and N.J.S.A. 43:21-37. If this be so, then those statutory provisions, as well as the Division's regulation, are invalid as offending the due process and equal protection clauses of the Federal Constitution. By granting such preferential treatment to the State plan they create a special classification, wholly arbitrary and not based upon any material and substantial distinctions reasonably related to the subject matter of the legislation or to the considerations of policy to be served. Washington National Ins. Co. v. Board of *407 Review, 1 N.J. 545 (1949). In short, there are no distinctions between State plan and private plans that justify this inequality of treatment. Compare, WHYY, Inc. v. Glassboro, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968).
The majority of the court rejects the constitutional challenge. Justification of this disparate treatment as between the State plan and private plans is predicated upon the thesis that "keeping [the State plan] ... properly funded" was a legitimate concern of the Legislature in requiring that temporary disability insurance protection be afforded to employees disabled and unable to work because of nonoccupational illness or injury. It is noted further that the State had the power to have "preempted the entire area of [temporary] disability benefits" and, therefore, the authority to have excluded private plans from the field entirely. Given such preemptive right, it is concluded, the Legislature had the prerogative to qualify and to condition the grant of permission to employers so desiring to provide coverage by means of private plans (as self-insurers or otherwise) by laying upon the private plans the burden of assuming the entire liability of the State plan for benefits, whenever there was concurrent employment and simultaneous coverage by State plan and private plan  thus creating a windfall for the State plan to the end of keeping it "properly funded" at the expense of the private plan whenever this accidental combination of events occurs. Neither N.J. Insurance Agents v. Hospital Service Plan N.J., 68 N.J. 213 (1975) nor Borland v. Bayonne Hospital, 122 N.J. Super. 387 (Ch. Div. 1973), aff'd o.b. 136 N.J. Super. 60 (App. Div. 1975), appeal now pending in Supreme Court, involves or supports such a proposition in the factual context here under review.
Without doubt, the Legislature has the right (and the obligation) to assure adequate funding of the State plan. In so doing, however, the means and formulae employed also must meet the due process and equal protection requirements. *408 And those requirements are not fulfilled by assessing only certain private plans whose selection and quantum of assessment both are determined by the random process necessarily dependent upon the coincidence of the fortuitous circumstances decreed by the Division in N.J.A.C. 12:18-2.10(c). Such haphazard and unequal method of providing additional funds to sustain the State plan becomes even less rational and reasonable when contrasted with the method devised by the Legislature specifically to meet inadequate funding of the State plan  namely, by levying an assessment upon all employers, whether covered by private plan or State plan, at equal rates. N.J.S.A. 43:21-46(b).
The inequity and unequal treatment accorded to private plans by N.J.A.C. 12:18-2.10(c) is even more striking and compelling when it is observed that, while forbidding apportionment of liability as between State plan and private plan and imposing liability entirely upon the private plan, the Division at the same time mandates apportionment where the concurrent employments are with employers all of whom are covered by private plans. N.J.A.C. 12:18-2.10(d). More significantly, it would appear that among the relatively few States which authorize coverage by both State plan and private plan, none but New Jersey so amerces the private plan in the event of concurrent employment of a covered employee by a State plan employer.
In summary, the imposition of an assessment solely against members of the group composed of private plan for the financial benefit of the State plan in itself constitutes invidious discrimination. Additionally, the scheme whereby such assessments are imposed upon the members of the group is likewise violative of these same constitutional proscriptions. Thus, the assessment is imposed not by an equitable levy upon all private plans at equal rates, but rather is imposed only upon some of the private plans which are selected according to chance  the happenstance of coverage of an employee who is simultaneously employed by an employer covered by the *409 State plan; moreover the amount of the assessment itself is an uncertain variable contingent upon the respective amounts of benefits to which the employee otherwise would be entitled from each employment.
For the foregoing reasons, I would hold invalid the provisions of N.J.A.C. 12:18-2.10(c) and reverse the determination below, and remand the matter to the Division of Employment Security with directions that the State plan and the Store Workers Plan each pay a pro rata share of the benefits otherwise payable by the State plan ($81 weekly) for the entire period of disability, apportioned in the same proportion that the claimant earned wages from her concurrent employers for the eight calendar weeks immediately preceding the commencement of her disability  i.e., according to the same formula promulgated by the Division for apportionment in cases of concurrent employment where the coverages are all by private plans.
NOTES
[1] Store Plan is a cooperative health trust created, funded, controlled and operated under a trust agreement. The general purpose of the trust fund is to provide disability benefits to employees covered by collective bargaining agreements between various chain store employers and store workers unions. Store Plan is an approved private plan under the act here involved. Gimbel is one of the employers covered by Store Plan, which provides for proportionate disability benefits for part-time employees.
[2] Store Plan points to N.J.A.C. 12:18-2.10(d) as indicating a more equitable method of apportioning benefit liability under the act. That regulation relates to an employee in concurrent employment with two or more private plan employers and provides for an apportionment of payments among them. The act, however, does not preclude receipt of benefits from two or more private plans. Accordingly, we need not be concerned with the comparative equities of the two regulations.
[3] Public Hearing on Assembly Bills Nos. 474, 475, 476 before the Assembly Committee on Judiciary (April 9, 1947); Public Hearing on Committee Substitute for S. 147 and A. 28 Before the Senate Banking and Insurance Committee (April 1948); Report of Senate Committee on Banking and Insurance on S. 147 and A. 28 Respecting Cash Sickness Benefits (March 22, 1948); New Jersey State Commission on Post War Economic Welfare, Cash Sickness Benefits, Supplement to Fourth Report (March 31, 1947).
[4] Washington National Ins. Co. v. Board of Review, 1 N.J. 545 (1949), is inapposite. There industrial life insurance agents were included within the coverage of the Unemployment Compensation Act, while other industrial insurance agents were not. All such agents were found to be rationally within the same class for purposes of the application of the act. In the instant case there is a reasonable basis for distinguishing private plans and the State Plan for the purpose of the regulation here involved.
[5] State Plan employers' contributions may be decreased or increased based on their individual experience rating and the balance in the State Plan fund. See N.J.S.A. 43:21-7.