36 A.3d 1066 (2012)
424 N.J. Super. 160
NEW JERSEY DENTAL ASSOCIATION, Plaintiff-Appellant,
v.
METROPOLITAN LIFE INSURANCE COMPANY and Aetna Life Insurance Company, Defendants-Respondents.
Not in source.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 2011.
Decided February 15, 2012.
*1067 Arthur Meisel argued the cause for appellant.
Patricia A. Lee argued the cause for respondent Aetna Life Insurance Company (Connell Foley, LLP, attorneys; Liza M. Walsh, Marc D. Haefner, Neil V. Shah, Roseland, and Ms. Lee, on the joint brief).
Brown & Connery, LLP, attorneys for respondent Metropolitan Life Insurance Company (Michael Vassalotti, Westmont, on the joint brief).
James L. Griffith, Jr. (Akin Gump Strauss Hauer & Feld, LLP), attorney for respondent Metropolitan Life Insurance Company (Mr. Griffith, on the joint brief).
Christine DiMarzio, Deputy Attorney General, argued the cause for amicus curiae Department of Banking and Insurance (Paula T. Dow, Attorney General, attorney; Ms. DiMarzio, on the brief).
Before Judges PARRILLO, GRALL and ALVAREZ[1].
*1068 The opinion of the court was delivered by
GRALL, J.A.D.
In conjunction with dental plans approved by the Commissioner of the Department of Banking and Insurance (Commissioner or Department) pursuant to the selective contracting law, N.J.S.A. 17B:27A-54, Metropolitan Life Insurance Company and Aetna Life Insurance Company (collectively the carriers), offer an ancillary program for dental service not covered by their plans. The ancillary program allows a subscriber to receive a service not covered by the plan at a price the carriers fix in contracts with network dentists. N.J.A.C. 11:22-5.10(a)(2). Contending that the selective contracting law does not authorize the offering of this ancillary program in conjunction with a dental plan, the New Jersey Dental Association (Association) filed a declaratory action seeking to invalidate and enjoin the clauses in its members' contracts with the carriers that are essential to the ancillary program. The carriers defended, arguing that the Association could not enforce the insurance law in a private action and that the ancillary programs are authorized by a regulation, N.J.A.C. 11:22-5.10, that the Commissioner adopted in order "to enforce and administer" the selective contracting law. N.J.S.A. 17B:27A-54.
Following a removal of the action to Federal District Court and its dismissal and remand, the trial court granted the carriers' motion to dismiss on the ground that there is no private cause of action to enforce the insurance law. In addition, the court denied the Association's motion for summary judgment on the ground that the ancillary programs are permitted by the regulation, N.J.A.C. 11:22-5.10(a)(2).
The Association appeals, and we have granted the Department leave to participate as amicus curiae. According to the Association, "the pivotal issue" on appeal is whether the Commissioner has "jurisdiction to authorize" carriers offering dental plans to establish fees that "can be charged by their network dentists for non-covered services." Passing the procedural irregularities, we reach the merits and reject this claim.

I
We address the questions relevant to our exercise of jurisdiction first. The Association's ability to challenge the legality of the Commissioner's action does not turn on whether the Legislature expressly granted or implied a private cause of action under the selective contracting law. R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271-76, 279-81, 773 A.2d 1132 (2001). A private cause of action is essential when the plaintiff seeks damages for injury or loss suffered as a consequence of another's violation of a statute or to compel another private party to comply with a statute. Id. at 271-76, 773 A.2d 1132; Piscitelli v. Classic Residence by Hyatt, 408 N.J.Super. 83, 103-04, 973 A.2d 948 (App.Div. 2009); Med. Soc'y of New Jersey v. Ameri-Health HMO, Inc., 376 N.J.Super. 48, 58, 868 A.2d 1162 (App.Div.2005).
The issue in this case is different. Although the terms of a contract are generally left to the parties, courts declare contracts invalid if they "violate statutes." Saxon Const. & Mgmt. Corp. v. Masterclean of North Carolina, Inc., 273 N.J.Super. 231, 235-36, 641 A.2d 1056 (App.Div.), certif. denied, 137 N.J. 314, 645 A.2d 142 (1994); see Restatement (Second) of Contracts § 178 (1981) (discussing contracts that are unenforceable as a matter of public policy). One questioning the legality of a contract provision may obtain a judicial determination of the issue and injunctive relief. N.J.S.A. 2A:16-53, -54, -59. Such *1069 an action is not one to enforce the law, it is one to determine whether courts will enforce the contract.
In some circumstances, litigation of contractual rights affected by statutory law may raise a question distinct from the existence of a private cause of action whether the courts or a governmental entity charged with implementing and enforcing the law has primary authority to address the issue. In Gaydos, the plaintiff sought relief for breach of the contractual duty of good faith and fair dealing. 168 N.J. at 258, 773 A.2d 1132. The claimed breach was based "solely on" plaintiff's allegation that the defendant violated an insurance law. Id. at 278, 773 A.2d 1132. Because the law at issue was part of an "elaborate legislative and regulatory scheme," the Court concluded that the Legislature intended to "invest [the Department] with primary authority" to implement and enforce it. Id. at 282, 773 A.2d 1132. For that reason, and because the Commissioner had not considered whether the defendant's conduct violated the law, the Court held that the Department, not the trial court, should determine the question. Id. at 283, 773 A.2d 1132. Accordingly, the Court directed a transfer of the issue to the Department. Ibid.; see R. 1:13-4 (authorizing such transfers by any court).
In this case, there was no risk of interference with the Commissioner's primary authority. The only issue was the legality of offering this ancillary program with the dental plan, and the Commissioner had exercised primary authority and resolved the issue by adopting a regulation allowing the practice.
When the trial court decided the dispositive motions, it was apparent that the Association was challenging the Commissioner's regulation approving the ancillary programs. A statutory cause of action is not needed to challenge governmental action; one aggrieved by improper official action has a constitutional right to seek judicial review. Elizabeth Fed. Sav. & Loan Ass'n v. Howell, 24 N.J. 488, 499-501, 132 A.2d 779 (1957); accord In re Camden County, 170 N.J. 439, 447, 790 A.2d 158 (2002). Indeed, the Legislature has recognized the constitutional limitation on its authority to restrict judicial review of agency action. N.J.S.A. 52:14B-3.3; see In re Amico/Tunnel Carwash, 371 N.J.Super. 199, 208, 852 A.2d 277 (App.Div.2004) (noting that N.J.S.A. 52:14B-3.3 indicates that the Legislature did not intend "to interfere with the constitutionally protected right to appeal an agency decision").
Exercise of the constitutional right is a function of standing, which "is available" not only "to the direct parties to that administrative action" but also to "any one who is affected or aggrieved in fact by that decision." In re Camden County, supra, 170 N.J. at 446, 790 A.2d 158; see, e.g., Indep. Energy Producers of N.J. v. N.J. Dep't of Envtl. Prot., 275 N.J.Super. 46, 55-56, 645 A.2d 166 (App.Div.), certif. denied, 139 N.J. 187, 652 A.2d 175 (1994). Moreover, an organization whose members are aggrieved and have interests that are sufficiently adverse has standing to challenge agency action on behalf of its members. Home Builders League of S. Jersey, Inc. v. Twp. of Berlin, 81 N.J. 127, 132-35, 405 A.2d 381 (1979); In re Six Month Extension of N.J.A.C. 5:91-1 et seq., 372 N.J.Super. 61, 86, 855 A.2d 582 (App.Div.2004). The Association alleged economic detriment to its members, and that is a sufficient basis for standing. See In re Camden County, supra, 170 N.J. at 448, 790 A.2d 158.
For the foregoing reasons, the Association's complaint was improperly dismissed as an unauthorized private cause of action. That said, we consider whether we should *1070 reach the merits of the Association's challenge to the Department's action despite the Association's failure to file a direct appeal. Rule 2:2-3(a)(2) vests this court with exclusive jurisdiction to review State agency action. Prado v. State, 186 N.J. 413, 422, 895 A.2d 1154 (2006). When it became clear that the Association's request for declaratory relief was in essence a challenge to a regulation, the Association should have amended its complaint, joined the Department and moved for a transfer to this court, pursuant to Rule 1:13-4, as a direct appeal from the agency action. Indeed, the trial court had the authority to transfer the case on its own motion. R. 1:13-4.
We agree that the Association should have taken a direct appeal from the Commissioner's promulgation of the regulation.[2] But we have jurisdiction to decide the challenge to the regulation, and it is a matter of public importance.[3] In addition, the Department has participated in this appeal, and the Commissioner, who has a statutory obligation to administer and enforce selective contracting arrangements, N.J.S.A. 17B:27A-54, has addressed the issue by adopting N.J.A.C. 11:22-5.10(a)(2). Accordingly, we elect to reach the merits. S. New Jersey Newspapers, Inc. v. Twp. of Mount Laurel, 275 N.J.Super. 465, 473-74, 646 A.2d 510 (App.Div. 1994); see also New Jersey Ass'n of Indep. Ins. Agents v. Hosp. Serv. Plan of New Jersey, 68 N.J. 213, 216 n. 1, 343 A.2d 739 (1975) (determining to "pass" similar irregularities).

II
We turn to consider whether the regulation exceeds the Commissioner's authority.

A
The pertinent facts are not disputed, and, for the most part, depend on the terms of the selective contracting law, N.J.S.A. 17B:27A-54, and the regulations implementing that law.
In pertinent part, N.J.S.A. 17B:27A-54 provides:
Notwithstanding any other law to the contrary, the [C]ommissioner is authorized to approve the establishment of an arrangement by an insurance company operating pursuant to Title 17B of the New Jersey Statutes and authorized to issue health benefits plans in this State,. . . which provides for selective contracting with health care providers and reasonable benefit differentials applicable to participating and nonparticipating health care providers.
The agreement for an arrangement shall be filed and approved by the [C]ommissioner before it becomes effective. The [C]ommissioner shall approve the agreement if he determines, in consultation with the [C]ommissioner of Health, that the arrangement promotes health care cost containment while adequately *1071 preserving quality of care. The [C]ommissioner may adopt regulations pursuant to the "Administrative Procedure Act," [N.J.S.A. 52:14B-1 to -15] necessary to enforce and administer the arrangements.
There is no dispute that these carriers are insurance companies operating pursuant to Title 17B of the New Jersey Statutes and are authorized to issue health benefits plans in this State. This statute permits them to offer health benefits plans based on "selective contracting with health care providers" if the Commissioner approves them. The Commissioner must approve a plan if, "in consultation with the Commissioner of Health," the Commissioner determines that "the arrangement promotes health care cost containment while adequately preserving quality of care." Ibid. The parties agree that the Commissioner has approved these carriers' plans.
The statute grants, and the Department has exercised, the authority to adopt regulations "necessary to enforce and administer" selective contracting arrangements. Since the law took effect on June 30, 1993, L. 1993, c. 162, § 22, the Commissioner has adopted, supplemented and amended regulations. Like N.J.S.A. 17B:27A-54, the regulations apply "to all carriers operating pursuant to Title 17B . . ., and issuing health benefits plans utilizing selective contracting arrangements in this State." N.J.A.C. 11:4-37.1(b); see N.J.A.C. 11:4-37.2 (defining the term "carrier"). Dental plans based on selective contracting are among those addressed in the Department's regulations. N.J.A.C. 11:4-37.2; N.J.A.C. 11:22:5-1(a); N.J.A.C. 11:22-5.10.
Apart from explaining that selective contracting involves contracts between insurers and health care providers and "benefit differentials applicable to participating and nonparticipating" providers, the Legislature has not defined the contours of a permissible arrangement. The law leaves those issues for the Commissioner to address in regulations adopted to administer and enforce the law consistent with the stated goals"health care cost containment and preserv[ation] of quality care." N.J.S.A. 17B:27A-54.
N.J.A.C. 11:22-5.2 provides that "`Selective contracting arrangement contract' . . . means a health benefit plan issued by an insurance company that provides covered services . . . through a network of providers, and pays benefits for covered services and supplies provided by out-of-network providers." Cf. N.J.A.C. 11:4-37.2 (defining the phrase in different but not inconsistent terms).
Both the statutory and regulatory definitions refer to "benefits" for covered services. Neither addresses contracts fixing prices for services that are not covered by the plan.
The Commissioner, however, has adopted two regulations that address payments that patients who are subscribers make on their own behalf when a service is not covered by the carrier's plan. The regulations address these payments for non-covered services in the context of limiting the manner in which participating providers may collect payment from a patient who has a plan and in the context of limiting costs a carrier may pass on to a plan subscriber.
The first regulation permits a participating dentist and a subscriber to agree to a price the subscriber will pay for a service not covered by the plan. With the exception of copayments and coinsurance, N.J.A.C. 11:4-37.4(c)(8) generally precludes providers from collecting any fee from a subscriber. But N.J.A.C. 11:4-37.4(c)(8) provides an exception that permits a provider and a patient to agree on a fee for a non-covered service, so long as the patient's obligation to pay is clarified *1072 before the fact. The prior notice is the point of the regulation.
The second regulation permits a participating dentist to charge a subscriber a fee for a service not covered by a plan that is fixed in the dentist's contract with the carrier. N.J.A.C. 11:22-5.10. Paragraph (a)(2) of this regulation is the center of this dispute. To provide context, we set forth N.J.A.C. 11:22-5.10 in full and with emphasis:
(a) The following standards apply to health benefit plans and stand-alone dental plans that provide benefits for dental services only when rendered by network providers, and plans that provide benefits for dental services rendered by both network and out-of-network providers:

1. The in-network benefit provided by the carrier shall result in average cost sharing, through coinsurance or copayments, of no more than 75 percent of the carrier's contracted cost of that service or for the cost of a class of similar services.

i. An aggregate deductible for all services and any dollar benefit maximums may be disregarded in determining the cost-sharing, but a per service deductible shall be considered a copayment.
ii. A scheduled in-network benefit shall be considered a benefit with a copayment equal to the difference between the contracted rate and the scheduled benefit.
iii. A carrier shall not use the cost of periodic examinations in determining the average cost sharing requirement.
2. A carrier that provides no in-network benefit for a service may allow the subscriber to receive that service by having the subscriber pay to the provider the carrier's in-network contracted rate. In such cases, the services are not considered to be covered services for purposes of meeting the maximum 75 percent copayment/coinsurance requirement.

This regulation acknowledges that a carrier "may allow" the subscriber to receive a non-covered service for an "in-network contracted rate." N.J.A.C. 11:22-5.10(a)(2). The point of the regulation, however, is to preclude the carrier from considering that non-covered service in calculating the maximum permissible copayment and coinsurance. Ibid. The provision does not require or regulate contractual fee arrangements for services that are not part of the insurance benefit.
N.J.A.C. 11:22-5.10's permissive stance on negotiated fees for services not covered by dental insurance plans is consistent with the Commissioner's view that such programs are not insurance. In an unrelated rulemaking proceeding, commenters asked the Commissioner to address "discount cards"membership programs offering nothing but health care services at discounted rates negotiated by the providers "through their contracts with carriers." 41 N.J.R. 4117(b) (summarizing comments 6 & 9 submitted on proposed regulations governing health insurance identification cards). The Commissioner declined, explaining that "discount card programs are not insurance but are merely a list of providers willing to offer reductions in billed fees and therefore are not subject to regulation by this Department." Id. at 4119 (response to comment 6); see also id. at 4120 (response to comment 9 "reiterat[ing] that discount plans are not insurance but instead are a list of providers willing to accept less than their billed rates" and stating "[s]uch plans are not regulated by this Department").
The Association did not participate in the rulemaking proceedings that led to the adoption of N.J.A.C. 11:22-5.10(a)(2). The regulation adding paragraph (a)(2) was proposed in January and again in December *1073 2008 as part of a set of comprehensive amendments addressing health benefits plans. 40 N.J.R. 6915(a) at 6915-16. During the two comment periods that preceded the adoption of N.J.A.C. 11:22-5.10(a)(2), the only comments submitted were positive. Id. at 6916, 6919; 41 N.J.R. 3302(b) at 3302, 3304.
It is worth noting, that during the period between the filing of the Association's brief and reply brief on this appeal, the Department proposed a readoption of the regulations in N.J.A.C. 11:22-5, which were scheduled to expire on October 23, 2011. In that notice of regulatory action, the Department also stated its intention "to propose changes to these rules in the near future." 43 N.J.R. 1236(a) at 1236. The Department explained:
The Department has . . . determined that including proposal revisions to the rules at N.J.A.C. 11:22-1 and 11:22-5 as part of the readoption process of this chapter would not be appropriate because of the extensive nature of the changes needed to be made to the rules and the potential for delaying readoption of this chapter. The Department intends to propose changes to these rules in the near future.
[Ibid.]
The regulations were readopted on September 20, 2011. 43 N.J.R. 2668(b) at 2669. As of January 3, 2012, the Department has not proposed additional amendments.

B
The scope of an agency's authority to adopt a regulation depends on the terms of the statute delegating the authority and the Legislature's intent. Med. Soc'y of New Jersey v. N.J. Dep't of Law & Pub. Safety, Div. of Consumer Affairs, 120 N.J. 18, 25-26, 575 A.2d 1348 (1990). That is a legal question, which we review de novo.
The standards are well-settled. "An agency regulation, like a legislative act, is presumed to be valid and the burden is on the challenger to show either that the regulation is inconsistent with its enabling statute or is plainly arbitrary." In re New Jersey Individual Health Coverage Program's Readoption of N.J.A.C. 11:20-1 et seq., 179 N.J. 570, 579, 847 A.2d 552 (2004). Courts "place[ ] great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted." Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 69-70, 389 A.2d 465 (1978). But because "[a]dministrative regulations `cannot alter the terms of a statute or frustrate the legislative policy,'" In re New Jersey Individual Health Coverage, supra, 179 N.J. at 579, 847 A.2d 552 (quoting Med. Soc'y of New Jersey, supra, 120 N.J. at 25, 575 A.2d 1348), courts "must look to the statute to determine the extent of the agency's delegated authority," id. at 580, 847 A.2d 552.
"When an agency, in promulgating a regulation, arrogates to itself a power that has not been delegated to it by the Legislature, it has acted arbitrarily and capriciously," and the regulation is invalidated. Ibid. "An administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows." Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 528, 197 A.2d 673 (1964).
The Association has not shown grounds for invalidation of the regulation under the foregoing standards. The selective contracting law gives the Commissioner broad authority to approve health benefits plans based on a carrier's contracts with providers so long as the arrangement "promotes health care cost containment while adequately preserving quality of care." N.J.S.A. 17B:27A-54. The statute *1074 is silent on ancillary programs through which carriers offer cost savings on services for which there is no insurance benefit, i.e., those services not covered by the plans.
The Association does not contend that these ancillary programs based on contracts between carriers and dentists participating in their dental plans are insurance subject to regulation by the Commissioner. In fact, the Association brought the Department's position on similar discount programs to our attention, and no brief submitted on this appeal suggests that these ancillary programs are prohibited by any other law. The Association's claim is that the Commissioner is not authorized to allow the offering of these programs as an ancillary to a health benefits plan. Boiled down, the Association's contention is that the Department exceeded its authority by allowing the bundling of an otherwise lawful ancillary program for services not covered by a dental plan with an otherwise lawful dental plan based on selective contracting.
To address this contention, we must focus on the terms of the statute, not the complex questions of public policy and competing interests implicated by the regulation. Under the statute, the Commissioner cannot disapprove an otherwise valid selective contracting arrangement because it includes an ancillary program for services outside the plan unless the Commissioner concludes that the bundling has a negative impact on "health care cost containment" or "preserv[ation of] quality of care."
By viewing paragraph (a)(2) of N.J.A.C. 11:22-5.10 in isolation, the Association argues that the Commissioner has authorized these ancillary programs without statutory authority. A reading of the regulations as a whole has led us to disagree. What the Commissioner has done, in the context of administering dental plans, is leave the cost of services not covered by the plan to contracteither a contract between the dentist and patient or a contract between a carrier and dentists participating in its plan. We accept the Commissioner's position that the Department has the authority to regulate insurance but not programs offering purchasers discounts on dental services. The Commissioner's view is quite consistent with the general rulenormally parties are free to contract as they wish. Saxon, supra, 273 N.J.Super. at 235-36, 641 A.2d 1056.
The regulation does not compel participating dentists to accept the contract provisions that facilitate and are essential to the ancillary program. It permits carriers whose participating dentists agree to offer this program. With respect to the bundling of benefit plans and ancillary programs, the selective contracting law does nothing more than permit the Commissioner to bar the practice if it defeats either of the Legislature's stated goalshealth care cost containment and quality care.
Finding no action beyond the scope of the delegated authority, we conclude that the Association has failed to overcome the presumption of validity. Accordingly, we reject the Association's challenges to N.J.A.C. 11:22-5.10(a)(2).
The Association presents additional arguments, which we have considered. They lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). It suffices to note that the Commissioner has not unconstitutionally delegated unbridled discretion to contract, arrogated undelegated power or extended the statute beyond its scope; the Commissioner has simply declined to restrict their right to contract on a matter the Department does not regulate.
As a postscript, we note that the Association may petition the Commissioner for *1075 an amendment of the regulations. N.J.S.A. 52:14B-4. Considering the Department's stated intention to amend them, the time appears to be right.
Additionally, the Association may seek relief in the Legislature. In a law now expired, the Legislature expressed concern and acted to address the relative bargaining positions of carriers and physicians and dentists. See N.J.S.A. 52:17B-196 to -209 (L. 2001, c. 371, § 15 (adopted January 8, 2002 to take effect in ninety days and expire six years later)). And, legislatures of other states have enacted laws addressing non-covered service clauses related to ancillary programs like those at issue here. See, e.g., Va.Code Ann. § 38.2-3407.17(B) (2011) (prohibiting contracts establishing fees for services not covered under the plan); Cal. Ins.Code § 10120.3 (2012) (prohibiting contracts that "require[ ] dentist[s] to accept an amount set by the insurer . . . [for services] that are not covered . . . under the. . . policy").
Affirmed.
NOTES
[1] Judge Alvarez did not participate in oral argument. However, the parties consented to her participation in the decision. R. 2:13-2(b).
[2] The carriers are mistaken that the Association's failure to participate in the rulemaking process precludes its challenge to the Department's authority to adopt the regulation. In re Six Month Extension, supra, 372 N.J.Super. at 88, 855 A.2d 582; Cumberland Farms, Inc. v. Moffett, 218 N.J.Super. 331, 337 n. 2, 527 A.2d 913 (App.Div. 1987); cf. Bergen Pines Hosp. v. Dep't of Human Servs., 96 N.J. 456, 469-72, 476 A.2d 784 (1984) (disallowing a challenge based on the adequacy of the agency record because of the party's failure to participate).
[3] In contrast, it appears that Association's challenge to the Department's approval of these carriers' plans is untimely; thus, we decline to consider it. R. 2:4-1(b); see Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 135, 770 A.2d 233 (2001) (holding that the forty-five-day period for filing an appeal applies to quasi-adjudicative but not quasi-legislative agency action).