760 A.2d 808

IN THE MATTER OF CAMDEN COUNTY, A BODY
POLITIC OF THE STATE OF NEW JERSEY.

COUNTY OF CAMDEN, APPELLANT, v. BOARD OF TRUSTEES OF
THE PUBLIC EMPLOYEES RETIREMENT SYSTEM (PERS),
RESPONDENT–RESPONDENT, AND WILLIAM J. SIMON,
PETITIONER–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 26, 2000—Decided October 27, 2000.

Before Judges STERN, A.A. RODRÍGUEZ and COLLESTER.

*Robert G. Millenky*, Camden County Counsel, attorney for appellant (*Donna M. Whiteside*, Assistant County Counsel, on the brief).

*John J. Farmer, Jr.*, Attorney General, attorney for respondent Board of Trustees (*Mary C. Jacobson*, Assistant Attorney General, of counsel; *Kimberly A. Sked*, Deputy Attorney General, on the brief).

*Archer & Greiner*, attorneys for respondent William J. Simon (*Ellis I. Medoway* and *Patrick M. Flynn*, on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

This is an appeal from the final administrative determination of the Board of Trustees ("Board") of the Public Employees Retirement System ("PERS") to award former Camden County Sheriff William J. Simon an ordinary disability retirement.

After we granted the Board's motion for a remand to permit the County to present additional information regarding Simon's medical condition and for a hearing, an Administrative Law Judge ("A.L.J.") determined that the matter was not a "contested case," as defined in *N.J.S.A.* 52:14B–2, and that the Board "should decline to offer Camden County a hearing in an 'uncontested case' proceeding" "because Camden County is without standing to challenge" the Board's decision. The Board adopted the initial decision of the A.L.J., determined that no "contested case" was involved, and "denied to offer Camden County an administrative hearing in an uncontested matter which involves disputes between private parties, namely Camden County and William Simon." We again remanded for consideration by the Board of the County's supplementary medical evidence in light of the Board's position, incident to its prior application for a remand, that the material

should be considered.[1]  The County now asserts that the Board failed to properly consider the actual duties performed by Simon and ignored or misinterpreted the recommendation of its own independent medical examiner who, it claims, determined that Simon's physical condition did not in any way interfere with the performance of his duties as Sheriff.  This appeal is technically from the final administrative action of April 22, 1999, adhering to the original award made in January 1995.

The dispute is not really over the award of a disability pension itself.  Despite its contributions, the County pays no part of the pension.  It asserts standing because it has an obligation by virtue of a contract with County employees (applied by practice to management positions like the Sheriff) to provide a portion of health insurance benefits to employees who are granted a disability retirement pension by PERS.[2]

---

[1] We find it unnecessary to recite much of the procedural background and some of the more technical issues involved.  This is the third time this matter has been before us.

[2] As explained by the A.L.J. in her May 1997 opinion:

> It has been the practice of Camden County for at least 16 years to offer management employees benefits which are identical to those offered to Camden County Council # 10, the main Union representing Camden County employees, Thus, if a Camden County employee is granted a disability retirement pension he [or] she is then entitled to receive a lifetime retiree rate for health benefits which also includes prescription benefits.  This retiree rate is 10% of the premium equivalency for Mr. Simon.  The balance of Mr. Simon's health benefits are paid by the County of Camden.  If Mr. Simon had not been awarded a disability pension then he would not have been entitled to retiree health and prescription benefits.  In essence, Mr. Simon would have had to pay out of pocket for COBRA coverage.  The average cost to the County of Camden is $226.16 per month (retiree rate of $194.70 health and $31.46 prescription) vers[u]s the $256.32 cost per month Mr. Simon would have to pay for COBRA.
>
> Since Mr. Simon is 50 years old and has a life expectancy of approximately 20 years, it will cost the County of Camden at least $54,000.00, ($226.16 × 20 years= $54,278.00).  Since Mr. Simon received his disability pension in January of 1995, his claim expenses alone have averaged $408.00 per month, inclusive of prescription.  Assuming the claim expenses remain the

There is no real dispute as to certain critical facts. Simon was first elected Sheriff in 1979 and took office in 1980. His foot was partially amputated by transmetatarsal amputation in December 1984. Thus, Simon had a disability during his tenure as Sheriff which did not affect his ability to perform the job as he performed it. He applied for his disability pension only after losing a bid for re-election in November 1994 and shortly before his term expired on January 1, 1995. There is no suggestion in the record before us that Simon's physical condition changed after 1984 or that there was any aggravation of his disability during his last term in office. In fact, he declined to take a vacation or vacate his office prior to the last day of his term.

The County contends that the Board's action is arbitrary, capricious and unreasonable because it never followed our prior "mandate" to consider Simon's "actual day to day duties." In addition, the County contends that the Board misread the report of its independent medical examiner, Dr. Gary Goldstein, because his report found no inability to perform the actual day-to-day duties performed by Simon, even though he could not perform the normal duties of a law enforcement officer. The Board, based on Dr. Goldstein's report, found that the Sheriff could not perform the duties embodied in the Department of Personnel job description.

In her 1997 initial decision, the A.L.J. concluded that the dispute did not constitute a "contested case," as defined in *N.J.S.A.* 52:14B–2(b), for purposes of her jurisdiction. *See N.J.S.A.* 52:14F–1 to –13. The A.L.J. also noted that the Board did not have to otherwise grant a hearing and concluded the Board should "deny Camden County the opportunity to challenge its decision in an administrative hearing because Camden County is without standing to challenge that decision." She explained:

same, there is a potential expense to the County of approximately $97,000.00.

"Standing" is a legal concept which requires a person or entity to demonstrate a sufficient stake in the outcome in order to be permitted to maintain the litigation. *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission,* 82 *N.J.* 57 [411 *A.*2d 168] (1980). Camden County premises its assertion that it has standing to bring the within action on two arguments: 1) that it has an interest in safe-guarding the integrity of the pension fund, and 2) that its private health benefits contract with Mr. Simon provides it with a financial interest in the PERS Board's determination. Neither argument is persuasive. As previously noted, the Legislature has explicitly and exclusively entrusted the PERS Board with the fiduciary duty for preserving the fiscal integrity of the pension fund. *N.J.S.A.* 43:15A–17; *N.J.S.A.* 43:15A–32[;] *Mount v. Trustees of the Public Employees' Retirement System, supra.* A similar attempt by the County of Bergen to exercise supervisory authority over another governmental body entrusted with specific statutory powers was soundly rejected by the Supreme Court in *County of Bergen v. Port of New York Authority,* 32 *N.J.* 303, 314–315 [160 *A.*2d 811] (1960). Evaluating the County's assertion that it was vindicating the public interest, the Court said:

> [T]he county seeks to sue on behalf of the general public to determine the ambit of the authority of another agency of the State. As we have said, the official role thus sought to be claimed belongs to the Governor and to the Attorney General. It may be exerted by another agency of the State only if the Legislature so authorizes. The issue is not a technical one of [*sic*] pleading or practice. It goes to the essence of the relationship among governmental bodies. To permit contests among them solely to vindicate the right of the public with respect to jurisdictional powers of other public bodies is to invite confusion in government and a diversion of public funds from the purposes for which they were entrusted. The fear is not idle or theoretical. Practical politics being what they are, one can readily foresee lively wrangling among governmental units if each may mount against the other assaults now permissible upon the initiative of the Governor, the Attorney General or a taxpayer or citizen to vindicate the public right.

As so aptly noted in respondent Simon's reply memorandum, "Essentially, the County seeks to impose itself as guardian of the public's interest in the fiscal integrity of the pension fund. That role is already occupied."

Camden County's assertion that it has a financial stake in this matter by virtue of a private contract between the County and Mr. Simon under which it has agreed to provide him with health benefits also fails to provide the County with standing to litigate its claims before the Board of Trustees of the Public Employees' Retirement System. Camden County may not confer standing upon itself by entering into a private agreement which conditions eligibility for County paid benefits upon a PERS Board determination.

On June 20, 1997 the Board adopted the initial decision (modified to omit reference to a concession which had led to our first remand).[3]

We agree with the A.L.J.'s thoughtful analysis and affirm the Board's 1997 determination on the standing issue. We add only the following.

The County claims that a plaintiff need only show "a sufficient stake in the outcome of the proceedings and [a] position [which] is adverse to that of defendant[ ]." *Home Builders League of S. Jersey, Inc. v. Township of Berlin,* 81 *N.J.* 127, 132, 405 *A.*2d 381 (1979). The County claims that a "sufficient stake" flows from the money it might spend paying health benefits for Simon over the next twenty years, estimated at approximately $97,000.00. However, the County also must show an "adverse" interest. "Adverse interest" is defined as "an interest that is opposed or contrary to that of someone else." BLACK'S LAW DICTIONARY 54 (7th ed.1999). Here, the County's interest in the Board's decision arises from a contractual obligation to a third party, not an obligation to pay the pension. Also, it is the Board which has the fiduciary duty of protecting the fund. *Mount v. Trustees of Pub. Employees' Retirement Sys.,* 133 *N.J.Super.* 72, 86, 335 *A.*2d 559 (App.Div. 1975). That the County has something to lose does not make its interest adverse to the Board. The County chose to enter into contractual obligations that bestow some benefits based on a decision made by the Board. Thus, the County elected to condition its obligation on the decision of a third party. The County's decision does not confer upon it the right to review PERS decisions which the County finds unfavorable.

We have reservations about the Board's decision. In particular, we are concerned about the right of a public employee to seek a disability pension based on a condition which existed either before he or she took office, or before he or she sought reelection to an office which was held when the condition developed sufficiently to

---

[3] Our subsequent remand was premised on the Board's prior decision that it would entertain the material offered by the County and its motion for a remand from the 1995 determination in order to do so.

obtain the disability pension.[4] However, for the reasons stated, we are satisfied that the County does not have standing to pursue the question. In addition, we agree that the fundamental concept of "standing" is necessary to prevent any individual from challenging a pension based on some indirect interest in protecting government funds. The Board and its appointing authority must be responsible for its decisions relating to the granting of a pension like the one it granted to Mr. Simon. Nevertheless, our decision would not preclude a timely lawsuit by the County to reform its contract (or some other action directed to its administrative practice of paying health insurance benefits for management personnel) on the ground that a pension in these circumstances was never contemplated. We, of course, take no position on the propriety of such action if it is taken.

The appeal is dismissed for lack of standing.

---

[4] As a Sheriff's term of office is three years, see *N.J.S.A.* 40A:9–100, Simon was reelected three times after his foot was partially amputated in 1984.