790 A.2d 158 (2002)
170 N.J. 439
In the Matter of CAMDEN COUNTY, A Body Politic of the State of New Jersey.
County of Camden, Appellant-Appellant,
v.
Board of Trustees of the Public Employees Retirement System (PERS), Respondent-Respondent, and
William J. Simon, Petitioner-Respondent.
Supreme Court of New Jersey.
Argued November 5, 2001.
Decided February 20, 2002.
*159 Donna M. Whiteside, Assistant County Counsel, argued the cause, for appellant (Robert G. Millenky, Camden County Counsel, attorney).
David Dembe, Deputy Attorney General, argued the cause for respondent Board of Trustees of the Public Employees' Retirement System (PERS) (John J. Farmer, Jr., Attorney General of New Jersey, attorney; Kimberly A. Sked, Deputy Attorney General, on the letter in lieu of brief).
Ellis I. Medoway, argued the cause for respondent William J. Simon (Archer & Greiner, attorneys; Mr. Medoway and Patrick M. Flynn, on the brief).
The opinion of the Court was delivered by LaVECCHIA, J.
This appeal arose from an administrative proceeding before the Board of Trustees of the Public Employees Retirement System (PERS Board), in which the County of Camden sought to contest the award of ordinary disability benefits to respondent William J. Simon, the former Camden County Sheriff. Simon applied for disability benefits immediately after failing in his bid for reelection to office in 1994 notwithstanding that he had been serving as Sheriff for the prior fifteen years.
The County claimed standing based on its financial obligation to pay a portion of the cost of health benefits for each of its disabled employees. Alternatively, the County asserted its public interest in preventing the fraudulent procurement of pension benefits. An administrative law judge and the PERS Board each concluded that the statutory scheme governing entitlement to an ordinary disability pension did not authorize a public employer to be a party in a hearing on an employee's application for such benefits. The Appellate Division affirmed, In Re Camden County, 334 N.J.Super. 624, 760 A.2d 808 (2000), and we granted the County's petition for certification, 167 N.J. 636, 772 A.2d 937 (2001), to review whether the County should have been granted standing to contest the disability pension award.

I.
The relevant facts are not in dispute. In 1979, Simon was elected to his first of several terms as Sheriff of Camden County. *160 The public office of county sheriff carries a three-year term. N.J.S.A. 40A:9-100. In December 1984, Simon's foot was partially amputated. He underwent transmetatarsal amputation, a procedure in which the front portion of the foot, usually starting from the base of the toes, is removed. Notwithstanding his condition, Simon was able to perform his job until he lost his bid for reelection in 1994. There is no evidence in the record that his physical condition worsened after his surgery, or that there was any aggravation to his condition during his period in office.
Simon was reelected as Sheriff three times after his foot surgery, serving for a total of fifteen consecutive years. In November 1994, however, he lost his bid for reelection. Almost immediately thereafter he applied to the Division of Pensions, Department of the Treasury, for ordinary disability retirement benefits to be effective January 1, 1995, the day his term as Sheriff would expire. Along with his application, Simon submitted medical reports from treating physicians. On January 5, 1995, the Medical Review Board for the PERS Board, acting pursuant to N.J.S.A. 43:15A-17, and N.J.A.C. 17:1-4.37(b), concluded that Simon was totally and permanently disabled from performing his job as Sheriff due to the partial amputation of his foot, rendering him "unable to stand for a prolonged period of time." Thirteen days later, the PERS Board granted Simon's application for ordinary disability retirement benefits, effective January 1, 1995.
Pursuant to N.J.S.A. 40A:10-23, local governmental employers are authorized to assume the cost of health care premiums for employees who retire on disability pension. Exercising that authority, the County provides such benefits through its collective bargaining agreement with the representative of its public employees. The County also provides its management employees, including sheriffs, with benefits identical to those provided through its agreement with Camden County Council # 10, the primary union representative of county employees. Thus, the PERS Board's determination that held Simon eligible for an ordinary disability pension obligated the County to pay ninety percent of the former Sheriff's medical insurance premiums and, in addition, provide prescription drug benefits. The record discloses that the undisputed average cost to the County for those health premiums is $226.16 per month.
The County requested that the PERS Board reconsider Simon's eligibility for a disability pension. Reconsideration resulted in reaffirmation of the Board's original decision.
The County appealed, but before the Appellate Division addressed the merits, it granted the PERS Board's motion for a remand to permit that Board to consider a pending independent medical examination of Simon. See N.J.A.C. 17:1-4.37(c). Dr. Gary Goldstein performed the examination. His report detailed Simon's description of the pain and swelling he typically experienced during a work day. The Goldstein report concluded that Simon could perform the administrative tasks associated with the position of sheriff unless the pain became so unbearable as to require medication. Significantly, Dr. Goldstein opined that Simon was capable of
performing any of the administrative duties required of him in the job description of sheriff. I feel that way because they could be done even by someone with a more proximal amputation or even someone who is wheelchair bound. The only time this would not be the case is if the patient was in such chronic pain that he required medication on an ongoing basis that would potentially cloud his judgment and this patient is not taking *161 any medication, even six weeks postoperatively.
On the other hand, Dr. Goldstein noted that Simon was not capable of running or personally performing the physical apprehension of criminals, but left to the PERS Board the question of whether such activities were required duties of the sheriff.
After reviewing Dr. Goldstein's report and a State Department of Personnel job description outlining the breadth of responsibilities allotted to the public office of sheriff, the PERS Board reaffirmed its determination that Simon was entitled to an ordinary disability pension. The County then requested and was granted a contested case hearing to challenge that determination. The Board referred the matter to the Office of Administrative Law. In an Initial Decision, the Administrative Law Judge (ALJ) assigned to the matter determined that the County did not have standing to request a hearing, stating:
There is no reason for the Board to grant Camden County an administrative hearing and thereby to require the expenditure of both scarce State resources and Mr. Simon's own financial resources to litigate a matter which is not in dispute between the real parties in interest, Mr. Simon and the Board of Trustees.
The ALJ held that the PERS Board, not the employer, was statutorily charged with protecting the fiscal integrity of the pension fund, and that although Simon was entitled to a hearing regarding his eligibility for disability benefits, no statutory or constitutional authority entitled the County to demand a hearing.
The Board adopted the Initial Decision of the ALJ and the County again appealed. For a second time, the Appellate Division remanded the matter. The court stated:
We agree with the Board that the matter did not present a "contested case," as none is accorded to the County by statute and we reject the County's contention that it has a right to such a hearing because of a claimed due process property interest based on the contract it elected to enter with its employees.
Nonetheless, the Appellate Division determined that a remand was appropriate because
even though the County is not entitled to a plenary or formal "contested case" hearing before an ALJ, it is nevertheless in these circumstances entitled to consideration of its contentions and a statement of findings and conclusions by the Board.
Accordingly, the PERS Board invited the County and Simon to submit additional evidence that the Board considered directly. For a fifth time the Board voted that Simon satisfied the statutory requirements for ordinary disability retirement benefits. A final administrative decision, including a Statement of Facts and Conclusions of Law, later memorialized the Board's decision.
A third appeal ensued. This time the Appellate Division agreed with the ALJ and PERS Board, holding that the County had no standing to challenge Simon's disability determination.
Here, the County's interest in the Board's decision arises from a contractual obligation to a third party, not an obligation to pay the pension. Also, it is the Board which has the fiduciary duty of protecting the fund. Mount v. Trustees of Pub. Employees' Retirement Sys., 133 N.J.Super. 72, 86, 335 A.2d 559 (App.Div.1975). That the County has something to lose does not make its interest adverse to the Board. Thus, the County elected to condition its obligation on the decision of a third party.

*162 The County's decision does not confer upon it the right to review PERS decisions which the County finds unfavorable.

[Camden County, supra, 334 N.J.Super. at 629, 760 A.2d 808.]
Although the panel did not reach the merits of Simon's disability claim, it noted its "reservations about the Board's decision." Ibid. The court particularly was "concerned about the right of a public employee to seek a disability pension based on a condition which existed either before he or she took office, or before he or she sought reelection to an office which was held when the condition developed sufficiently to obtain the disability pension." Id. at 629-30, 760 A.2d 808. Nonetheless, the panel was "satisfied that the County does not have standing to pursue the question[,]" and dismissed the appeal. Id. at 630, 760 A.2d 808.

II.
The County has committed to pay for health benefits for any employee determined to be eligible for a public employee's disability pension pursuant to statutory authority under N.J.S.A. 40A:10-23. In making that agreement, it did not reserve for itself the ability to affect the outcome of the disability pension determination, which by law is delegated to the PERS Board under N.J.S.A. 43:15A-17, -42; Mount, supra, 133 N.J.Super. at 86, 335 A.2d 559.
It is clear that standing to seek judicial review of an administrative agency's final action or decision is available to the direct parties to that administrative action as well as any one who is affected or aggrieved in fact by that decision. Elizabeth Federal Sav. & Loan Ass'n. v. Howell, 24 N.J. 488, 499-500, 132 A.2d 779 (1957); In re Application for Certificate of Pub. Convenience, 134 N.J.Super. 500, 505, 342 A.2d 219 (App.Div.1975); 37 New Jersey Practice, Administrative Law and Practice § 7.4 at 59 (Steven L. Lefelt, et. al., 2d ed.2000). Only "[a] substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for the purposes of standing." New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n, 82 N.J. 57, 67, 411 A.2d 168 (1980) (citations omitted). Generally, a person who has suffered any economic detriment as a result of an administrative agency action can gain standing for judicial review of that action without proving any unique financial damages. See Walker v. Borough of Stanhope, 23 N.J. 657, 662-63, 130 A.2d 372 (1957) (noting numerous decisions of courts adopting broad approach to standing where residents and taxpayers sought to set aside wrongful official action). As stated in Elizabeth Federal, supra, by Chief Justice Vanderbilt:
We start with the basic principle that an administrative officer is a creature of legislation who must act only within the bounds of the authority delegated to him, and that the courts in the exercise of their judicial power are permitted to review the ultimate application of the law which has been entrusted to the administrative officer when necessary for the protection of the rights of persons or property against an abuse of the power delegated.... Moreover, this right to seek judicial review of administrative decisions inheres not only in those who are direct parties to the initial proceedings before an administrative agency ... but also belongs to all persons who are directly affected by and aggrieved as a result of the particular action sought to be brought before the courts for review.

*163 [24 N.J. at 499-500 (citations omitted)(emphasis added).]
The right of judicial review to protect against improper official action is constitutionally secure and available as of right. N.J. Const. art. VI, § 5, ¶ 4; Elizabeth Federal, supra, 24 N.J. at 501, 132 A.2d 779 (citing Ward v. Keenan, 3 N.J. 298, 302-09, 70 A.2d 77 (1949)).
Despite a broad standing policy, our courts require that some real and direct interest be present before granting third party standing to seek judicial review of agency action. County or local governing bodies generally lack standing to challenge actions of government agencies merely because they represent the public. County of Bergen v. Port of New York Authority, 32 N.J. 303, 314-15, 160 A.2d 811 (1960). Protecting public interests is important, but it does not take precedence over the need to prevent one governmental body from interfering with the actions of another public body. Township of Stafford v. Zoning Bd. of Adjustment, 154 N.J. 62, 77, 711 A.2d 282 (1998). Thus, to the extent that the County rests its standing argument on its interest generally in preventing fraud on the pension system, we find that perceived interest to be too generalized to confer standing. The interest in preventing pension fraud is laudable; nonetheless, it is insufficient to confer standing in a controversy when another governmental body has specific statutory authority that encompasses the responsibility for protecting the public interest.
Although the mere assertion of a public interest-even by a governing body ordinarily is not sufficient to acquire standing to seek judicial review of an administrative agency decision, the existence of a financial interest that is affected directly by the agency action will confer standing on a governing body. In Essex County Welfare Bd. v. Dept. of Inst. and Agencies, 75 N.J. 232, 381 A.2d 349 (1978), cert. denied, 437 U.S. 910, 98 S.Ct. 3103, 57 L. Ed.2d 1141 (1978), this Court considered the right of a local welfare board to appeal a fair hearing decision of the State Division of Public Welfare that modified or reversed one of the local board's rulings. In dismissing the appeal based on a lack of standing, the Court observed that even though the local welfare board did not have standing in that case, "the right of the governing body of a County to appeal a fair hearing decision in an appropriate case remains[,]" because the county provided a substantial portion (12.5%) of the AFDC grant money. Id. at 238, 381 A.2d 349. See also Foreign Auto Preparation Serv. v. New Jersey Econ. Dev. Auth., 201 N.J.Super. 428, 431-32, 493 A.2d 550 (App. Div.1985) (citing Essex County to support finding that New Jersey Economic Development Authority (NJEDA) had standing to contest decision by Commissioner of Department of Community Affairs, stating that "NJEDA has a proprietary interest in the outcome of the case because it has been directed to pay a substantial sum in relocation assistance.").
In summary, a liberal approach to standing to seek review of administrative actions applies in this state, an approach that is less rigorous than the federal standing requirements. See Crescent Park Tenants Ass'n v. Realty Equities Corp. of New York, 58 N.J. 98, 107-08, 275 A.2d 433 (1971) ("Unlike the Federal Constitution, there is no express language in New Jersey's Constitution [confining] our judicial power to actual cases and controversies. Nevertheless, we will not render advisory opinions or function in the abstract nor will we entertain ... plaintiffs who are `mere intermeddlers,' or are merely interlopers or strangers to the dispute." (citations omitted)); New Jersey Practice, supra § 7.4 at 359. To possess standing *164 in a case, a party must present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision. Chamber of Commerce, supra, 82 N.J. at 67-69, 411 A.2d 168. Judge Lefelt aptly summarized standing in the administrative law context as follows:
In New Jersey, our courts seek to separate, in a common sense manner, intermeddlers from persons with discernible interests. The right to seek judicial review inheres in both direct parties to the proceeding and in all other parties directly affected or aggrieved by the administrative action. Normal standing rules require sufficient stake and adverseness in the subject matter of the litigation and a substantial likelihood that some harm will fall upon the party seeking standing in the event of an unfavorable decision. Thus, when an agency enforces its regulations against a respondent or considers an application for benefits, the respondent and applicant clearly have standing. In addition, other persons who have experienced a less immediate harm from the challenged agency action may also have standing.

[New Jersey Practice, supra § 7.4 at 360 (citations omitted).]
The pertinent rule governing intervention in administrative hearings under the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-1.1 to -21.6, allows for a similar breadth of protection to legitimate interests. N.J.A.C. 1:1-16.1 (allowing intervention to "[a]ny person or entity ... who has a statutory right to intervene or who will be substantially, specifically and directly affected by the outcome of a contested case....").

III.
In this matter, the County is entitled to standing to obtain review of the PERS Board determination awarding Simon a disability pension and to be involved directly in the development of a record that establishes whether Simon has a right to such benefits. The County wants to participate in the creation of that record to contest Simon's entitlement to a disability pension because for fifteen years Simon apparently could perform the duties of Sheriff of Camden County. The County notes that Simon sought reelection multiple times based, in part, on a representation to the public that he could perform the job. He sought to be declared "incapacitated" in accordance with the statute governing ordinary disability benefits only when he lost reelection to office and had but a few weeks left in his term. In those circumstances, the Board's award of a disability pension to Simon is, to the County, a curious one, and the County seeks standing in a hearing to contest its factual and legal underpinnings.
Under the pension statutes, a public employer is not made a party to an action concerning an employee's eligibility for an ordinary disability pension unless it is the employer that is seeking to retire the employee on disability status. N.J.S.A. 43:15A-42. The public employer ordinarily has no financial interest in the award of a disability pension because it does not pay for the pension. Thus, in that respect, the public employer is not affected or aggrieved by the disability pension award. N.J.S.A. 40A:10-23 alters that conclusion when a public employer elects to pay for health benefits to employees who retire on disability status. In such instances, as here, the public employer is directly affected by the PERS Board's action.
The County has a direct financial interest arising out of its statutorily-authorized *165 contractual obligation to provide for a substantial portion of the cost of health benefits for employees who become disabled and are incapacitated for the performance of their required duties. That obligation will require the County to pay annually ninety percent of the health benefit premiums for Simon. In seeking standing, the County asserts a right to contest the finding that Simon is "physically or mentally incapacitated for the performance of duty and should be retired." N.J.S.A. 43:15A-42. The County contends that the PERS Board took too literal an approach when it relied exclusively on the State Department of Personnel job description of a sheriff in evaluating Simon's incapacity for the performance of duties. The County asserts that the definition of Simon's work requirements as County Sheriff was flexible enough to accommodate his disability, or that his disability is not as severe as he describes it to be. Indeed, were the County asked to accommodate Simon's physical disability under the Americans with Disabilities Act (ADA), for example, the County would be prohibited from relying exclusively on the literal language of the job description of sheriff to determine fitness for the position. See e.g., Deane v. Pocono Medical Center, 142 F.3d 138, 148 (3d Cir.1998) (discussing that under the ADA, a "job description is not, as [defendant] contends, incontestable evidence that [an activity] is an essential function of [plaintiff's] job.... [W]hether a particular function is essential `is a factual determination that must be made on a case by case basis [based upon] all relevant evidence.' "(citations omitted)).
The County's interest here is economic and direct. It is not fanciful, not overly generalized, and not philosophical. It is of the type and character that routinely we would say advances the controverted fact analysis and leads to the creation of an appropriate record on which to adjudicate a case in controversy. In New Jersey, unlike the federal courts, we traditionally have taken a liberal approach to standing because we are not circumscribed by constitutional language. Nonetheless, the finding that standing should be allowed in this case requires no great elasticity of analysis.
At its core, this case is about a governmental entity that is directly and financially affected by a potential decision of an administrative agency, and desires an opportunity to be heard before that decision is rendered. The County seeks to participate in the development of a record, to argue its case fully, and also, possibly, to seek judicial review of an adverse decision. The County's request falls squarely within the heartland of our standing jurisprudence. Accordingly, we hold that the County is entitled to standing in an administrative hearing where a full record may be developed before the PERS Board renders a final determination on Simon's application for ordinary disability benefits pursuant to N.J.S.A. 43:15A-42.

IV.
The judgment of the Appellate Division is reversed and the matter remanded for further proceedings consistent with this opinion.
For reversal and remandmentChief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI7.
OpposedNone.