SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**New Jersey Coalition of Automotive Retailers, Inc. v. Ford Motor Company**
(A-7-24) (089378)

**Argued January 7, 2025 -- Decided July 29, 2025**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the Legislature, in defining a cause of action for violations of the Franchise Practices Act (FPA), N.J.S.A. 56:10-1 to -15, as between "[a]ny franchisee . . . against its franchisor," id. at -10, intended that no one else -- not even a trade association of franchisees like plaintiff New Jersey Coalition of Automotive Retailers (NJCAR) -- could bring such a claim.

NJCAR "represents all of New Jersey's franchised new car and truck retailers," and its members include over five hundred dealerships, which is the overwhelming majority of dealerships in New Jersey. Eighteen of defendant Ford Motor Company's Lincoln franchisees are NJCAR members, but at least one of those Lincoln dealerships was not a member during parts of this litigation. As a trade association, NJCAR represents the interests of its franchisee members but is not itself a franchisee.

NJCAR sued Ford, alleging that its Lincoln Commitment Program (LCP or the program) violates FPA provisions barring price differentials set forth in N.J.S.A. 56:10-7.4(h). The trial court found that N.J.S.A. 56:10-10 prohibits non-franchisees from bringing suit, thus denying NJCAR statutory standing in this case. NJCAR appealed, arguing that statutory standing is irrelevant because it has associational standing. The Appellate Division reversed, holding that NJCAR had associational standing. The Court granted certification. 258 N.J. 475 (2024).

**HELD:** Only franchisees can bring suit under the FPA. NJCAR is a trade association whose members consist of franchisee motor vehicle dealerships in New Jersey. NJCAR is not itself a motor vehicle franchisee, and it therefore lacks statutory standing to sue under the FPA.

1. Unlike the Federal Constitution, there is no express language in New Jersey's Constitution confining judicial power to actual cases and controversies. Thus, New Jersey courts have consistently taken a more liberal approach to standing than

1

federal law. In New Jersey, nonprofit organizations have representative standing to pursue claims on behalf of their members that are of common interest and could not more appropriately be pursued by individual members. Under that logic, for example, the Education Law Center has been determined to have standing to represent public school children in <u>Abbott</u> districts. But there is a difference between the absence of an affirmative grant of standing and a statutory scheme so specific and focused on regulating the conduct between defined persons, entities, or groups that it unmistakably limits standing to the regulated persons, entities, or groups. Indeed, the Legislature is within its power to define -- and, thus, limit -- the class of persons entitled to bring suit under an act for injuries cognizable under that act. (pp. 10-13)

2. The FPA's explicit purpose is "to define the relationship and responsibilities of franchisors and franchisees in connection with franchise arrangements and to protect franchisees from unreasonable termination by franchisors that may result from a disparity of bargaining power." N.J.S.A. 56:10-2. In providing that "[a]ny franchisee may bring an action against its franchisor," <u>id.</u> at -10, the FPA uses specific terms that set boundaries as to who can bring an FPA action, and against whom. The FPA defines the term "person" more broadly than "franchisor" and "franchisee." <u>Id.</u> at -3, -10. The Legislature could have allowed suit by "any person," or even "any party" or "any injured party," but it chose not to do so. Instead, the statute's terms are specific and provide solely that "any franchisee" can bring an FPA action against "<u>its</u> franchisor." <u>Id.</u> at -10 (emphasis added). The use of "its" -- a possessive singular -- reinforces the purpose of the FPA as explained by the Legislature. There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose, and the Court relies heavily on the Legislature's narrow expressed purpose here. Applying the facts to the plain language of the statutory text, the Court holds that only franchisees can bring suit under the FPA. NJCAR is not itself a motor vehicle franchisee, and it therefore cannot bring suit under the FPA. (pp. 14-17)

3. The Court's holding is limited solely to the FPA. The Court does not reach whether NJCAR would have associational standing to sue on behalf of its members under a different cause of action. (p. 17)

**REVERSED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.**

2

New Jersey Coalition of Automotive
Retailers, Inc., a non-profit
New Jersey Corporation,

Plaintiff-Respondent,

v.

Ford Motor Company, d/b/a
Lincoln Motor Company,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| January 7, 2025 | July 29, 2025 |

Robert M. Palumbos (Duane Morris) a member of the
Pennsylvania bar, admitted pro hac vice, argued the cause
for appellant (Duane Morris, and Campbell Conroy &
O'Neil, attorneys; Robert M. Palumbos, Andrew R.
Sperl, Leah A. Mintz, William J. Conroy, and Emily J.
Rogers, of counsel and on the briefs).

W. Kirby Bissell (Bass Sox Mercer) a member of the
Florida bar, admitted pro hac vice, argued the cause for
respondent (Genova Burns, and Bass Sox Mercer,
attorneys; W. Kirby Bissell, Jennifer Borek, and Jason T.
Allen (Bass Sox Mercer) of the Florida bar, admitted pro
hac vice, of counsel and on the brief).

In this statutory interpretation case, we determine whether the Legislature, in defining a cause of action for violations of the Franchise Practices Act (FPA), N.J.S.A. 56:10-1 to -15, as between "[a]ny franchisee . . . against its franchisor," id. at -10, intended that no one else -- not even a trade association of franchisees -- could bring such a claim.

The New Jersey Coalition of Automotive Retailers (NJCAR), a trade association composed of franchisee car dealerships, brought suit for declaratory and injunctive relief against Ford Motor Company for allegedly violating the FPA's prohibition on differential pricing of vehicles. Following cross-motions for summary judgment, the trial court found that NJCAR lacked standing because the plain text of the statute limited claims under the FPA to those brought by a franchisee against its franchisor.

NJCAR appealed, and the Appellate Division reversed and remanded for further proceedings. First, the Appellate Division held that NJCAR satisfied factors for associational standing; and second, it held that New Jersey's liberal standing doctrine did not countenance dismissal on statutory standing grounds.

We now reverse for the reasons below. Because we find that NJCAR lacks statutory standing under the FPA, we do not reach the question of

2

whether it would have had associational standing to sue on behalf of its members under a different cause of action.

I.

A.

Defendant Ford Motor Company (Ford) is a Delaware corporation, with its principal place of business in Michigan. It has a series of franchise relationships with car dealerships throughout the country, including in New Jersey. Ford operates under the Lincoln Motor Company name in the context of Lincoln branded vehicles.

Plaintiff NJCAR is a New Jersey non-profit corporation and trade association. NJCAR "represents all of New Jersey's franchised new car and truck retailers," and its members include over five hundred dealerships, which is the overwhelming majority of dealerships in New Jersey. Eighteen of Ford's Lincoln franchisees are NJCAR members, but at least one of those Lincoln dealerships was not a member during parts of this litigation. As a trade association, NJCAR represents the interests of its franchisee members but is not itself a franchisee.

B.

In 2011, Ford created the Lincoln Commitment Program (LCP or the program), which provides payments to some car dealerships operating as

3

Lincoln franchisees.  Ford's stated purpose for the program was to benefit the Lincoln brand by encouraging franchisees to invest in and improve the customer experience.  Ford has regularly changed the terms of the LCP, with the 2020 Phase II version of the program providing the basis for the present suit.  Participation in the program by franchisees is voluntary.

Under the program, Ford provides monthly and quarterly payments to participating franchisees who meet certain criteria.  Those payments vary.  Ford calculated the payments at between zero percent and 5.75 percent of the manufacturer's suggested retail price (MSRP), minus certain costs, of each Lincoln vehicle sold during the prior month or quarter.  Thus, because the payments were calculated based on the MSRP of sold vehicles, participating franchisee-dealerships did not receive an up-front discount when they purchased vehicles from Ford, but rather a lump sum payment based on vehicles sold to consumers.  The exact percentage earned for participation in the LCP was based on four different categories of criteria:  the threshold "Foundation" category as well as the three MSRP percentage earning categories of "Connected Client Experience," "LCORP," and "Facility."

The "Foundation" category criteria, which included maintaining a digital storefront, certain software requirements, and product training, were required to be met before a dealership could receive any payments but did not directly

4

affect the amount of compensation in those payments. Additionally, in Phase II of the 2020 program, Ford eliminated a prior "Engagement" category (containing criteria such as dedicated staffing and product training) and instead moved those criteria into the "Foundation" category.

In addition to having to meet all Foundation category criteria to receive any payment, dealerships could receive payments based on two of the three MSRP categories only if they met all the criteria within those categories. A franchisee could receive 1.5 percent for meeting all "Connected Client Experience" criteria, which included: offering to pick up and return the customers' vehicles during servicing; meeting a certain sales threshold of modem-equipped vehicles and having above a certain percentage of those activated; providing car washes; and receiving loaner vehicles. Similarly, a franchisee could receive 1.5 percent for meeting all "LCORP" criteria, which required use of Ford's Accelerate platform to acquire off-lease used vehicles and satisfying other requirements in sales and training for the certified pre-owned vehicles program. Any dealer who failed to meet all criteria for either of those categories earned none of the available 1.5 percent connected to the category.

Finally, the "Facility" criteria payments were earned on a gradated scale of zero, 1.0, or 2.75 percent. First, a franchisee had to commit to upgrading its

5

facility to the most up-to-date Lincoln brand exclusive design style. Those franchisees still using styles predating the 2003 design style received zero percent. Franchisees received 1.0 percent if they had the 2003 design style or newer but had a dual showroom, typically with Ford and Lincoln. Those with Lincoln-exclusive showrooms and relevant customer facilities received the full 2.75 percent for this category of criteria.

## C.

On January 31, 2020, NJCAR sued Ford, alleging that the LCP violates FPA provisions barring price differentials set forth in N.J.S.A. 56:10-7.4(h) (Section 7.4(h)). Following amended pleadings and discovery, the parties each moved for summary judgment. NJCAR argued that the LCP's payment structure amounted to an illicit differential "allowance, credit or bonus" under the FPA. Ford argued that NJCAR was seeking an improper advisory opinion on the propriety of the LCP. Ford further contended that the LCP did not violate the FPA and that NJCAR did not have either associational or statutory standing to bring the FPA claims.

Following oral argument, the trial court denied NJCAR's motion and granted Ford's. Specifically, the trial court found that N.J.S.A. 56:10-10 (Section 10) prohibits non-franchisees from bringing suit, thus denying NJCAR statutory standing in this case.

6

NJCAR appealed, arguing that statutory standing is irrelevant because it has associational standing, and that it should win on the merits. The Appellate Division reversed, holding that NJCAR had associational standing and that New Jersey's liberal jurisprudence on standing countenanced against strict application of Section 10's text.

Relying on the three-prong test derived from Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 343 (1977), the Appellate Division found that there was associational standing. Specifically, it found that there was a justiciable issue and controversy; that NJCAR's members would have individual standing to sue; that the issue was relevant to NJCAR's organizational purpose; and that, because NJCAR did not seek damages, there was no need to include NJCAR's members individually.

Although the appellate court acknowledged that Section 10's express language limited causes of action under the FPA to those brought by franchisees, the Appellate Division also noted that New Jersey's liberal standing jurisprudence disfavored interpreting that language to create a bar "when there is real dispute between parties that have a real interest." The appellate court thus determined that the trial court erred by finding that the statute barred NJCAR's claim and remanded the matter for further proceedings on the merits.

We granted Ford's petition for certification.  258 N.J. 475 (2024).

## II.

Ford argues that the Appellate Division erred in straying from the text of Section 10, which it argues clearly "permits no one other than a 'franchisee' to pursue a claim under the FPA."  To bolster its interpretation of the statute, Ford points to the affirmative defense found in N.J.S.A. 56:10-9 (Section 9), which requires that a defendant franchisor show that the plaintiff franchisee is in breach of the franchise agreement.  Based on Section 9's language, Ford contends it is evident that the Legislature contemplated that FPA actions would be brought only by franchisees.  Ford further argues that New Jersey's liberal approach to standing does not negate the clear intent of the statute in this case.  According to Ford, even if it does, NJCAR lacks associational standing because it cannot show injury to its members.

NJCAR responds that the Appellate Division was correct in finding that it has standing to bring this claim.  It argues that because its members could unquestionably bring suit individually under the statute, it can bring suit on their behalf so long as it satisfies associational standing.  NJCAR contends that the language of Sections 9 and 10 does not alter that ability.  NJCAR further asserts that the Appellate Division was correct in finding that it had associational standing because its members face legal and economic harms.

8

## III.

### A.

This Court reviews "a trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court." In re Est. of Jones, 259 N.J. 584, 594 (2025). We seek to determine whether, after considering the evidence "in the light most favorable to the non-moving party," the movant is nonetheless entitled to judgment. Ibid. (quoting Padilla v. Young Il An, 257 N.J. 540, 547 (2024)); see R. 4:46-2(c). "To reach that determination in this case, we must interpret" the FPA. Est. of Jones, 259 N.J. at 594.

"In construing a statute, our review is de novo." Est. of Spill ex rel. Spill v. Markovitz, 260 N.J. 146, 155 (2025). That includes interpreting the statute's explanation of who may bring the cause of action it creates in analyzing "[w]hether a party has standing to pursue a claim." See Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414, 416-17 (2018) (determining whether plaintiffs fell into the statutorily created class of "interested parties" entitled to bring a claim). We therefore proceed "without deference to the trial court's findings." Est. of Jones, 259 N.J. at 594. "[T]he Legislature's intent is paramount to a court's analysis," and we look to the plain language of the statutory text to determine that intent. Id. at 595. "We

9

ascribe to the statutory words their ordinary meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

B.

1.

Our courts do "not render advisory opinions or function in the abstract[,] nor will we entertain proceedings by plaintiffs who are 'mere intermeddlers,' or are merely interlopers or strangers to the dispute." Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107 (1971) (citations omitted) (quoting Baxter v. Baxter, 43 N.J. Eq. 82, 86 (Ch. 1887)). Rather, suits may be brought only by those with standing -- that is, those who "present a sufficient stake in the outcome of the litigation, a real adverseness with respect to the subject matter, and a substantial likelihood that the party will suffer harm in the event of an unfavorable decision." In re Camden County, 170 N.J. 439, 449 (2002).

In federal courts, when, as here, the plaintiff is an organization or an association, the plaintiff can establish standing either by claiming "that it suffered an injury in its own right" or by asserting "'standing solely as the representative of its members.'" Students for Fair Admissions, Inc. v.

President & Fellows of Harv. Coll., 600 U.S. 181, 199 (2023) (quoting Warth v. Seldin, 422 U.S. 490, 511 (1975)). The second form of standing is known as representational, organizational, or associational standing. See ibid.; United Food & Com. Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 552-53 (1996). To invoke that form of standing, an association "must demonstrate that '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Students for Fair Admissions, Inc., 600 U.S. at 199 (quoting Hunt, 432 U.S. at 343).

"Unlike the Federal Constitution, there is no express language in New Jersey's Constitution which confines the exercise of our judicial power to actual cases and controversies." Crescent Park Tenants Ass'n, 58 N.J. at 107. Contrast U.S. Const. art. III, § 2, with N.J. Const. art. VI, § 1. Thus, we have consistently "take[n] a more liberal approach to standing than federal law." In re Cong. Dists. by N.J. Redistricting Comm'n, 249 N.J. 561, 570 (2022) (citing Camden County, 170 N.J. at 448). That is, "we have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have . . . sweepingly reject[ed] procedural

11

frustrations in favor of 'just and expeditious determinations on the ultimate merits.'" Crescent Park Tenants Ass'n, 58 N.J. at 107-08 (quoting Tumarkin v. Friedman, 17 N.J. Super. 20, 21 (App. Div. 1951)).

Under that liberal standard, "[b]oth our statutes and appellate decisions have given wide recognition to suits by associations." Id. at 109. This is especially true where a party, including an association or its members, has even a limited private interest tied to a matter of great public interest. E.g., Salorio v. Glaser, 82 N.J. 482, 491 (1980); State Chamber of Com. v. Election L. Enf't Comm'n, 82 N.J. 57, 68 (1980); Jordan v. Horsemen's Benevolent & Protective Ass'n, 90 N.J. 422, 431-32 (1982). Thus, "[t]he standing of nonprofit associations to litigate in varying contexts has historically been upheld in New Jersey." In re Team Acad. Charter Sch., 459 N.J. Super. 111, 125-26 (App. Div. 2019) (quoting In re Ass'n of Trial Lawyers, 228 N.J. Super. 180, 185 (App. Div. 1988)), aff'd as modified on other grounds by 247 N.J. 46 (2021). In New Jersey, "[n]onprofit organizations have representative standing to pursue claims on behalf of their members that are of 'common interest' and could not more appropriately be pursued by individual members." Ibid. (quoting Crescent Park Tenants Ass'n, 58 N.J. at 109). Under that logic, for example, the Education Law Center has been determined to have standing to represent "public school children in Abbott districts . . . in order to ensure

12

their constitutional right to a thorough and efficient education is enforced." Id. at 127.

But "liberal standards" are not equivalent to no standards at all. See, e.g., Ass'n of Trial Lawyers of Am., 228 N.J. Super. at 185-87 (denying standing to an association seeking to challenge the constitutionality of a tort reform act because neither it nor its members suffered injury). And there is a difference between the absence of an affirmative grant of standing and a statutory scheme so specific and focused on regulating the conduct between defined persons, entities, or groups that it unmistakably limits standing to the regulated persons, entities, or groups.

Indeed, the Legislature is within its power to define -- and, thus, limit -- the class of persons entitled to bring suit under an act for injuries cognizable under that act. See, e.g., In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 278 (2017) (noting that N.J.S.A. 47:1A-6 of the Open Public Records Act "clearly and unambiguously confers the right to initiate a suit after a public agency's denial of access only upon the requestor" (second emphasis added)); Cherokee LCP Land, LLC, 243 N.J. at 418 (noting that N.J.S.A. 40:55D-4 limits standing for tax lienholders under the Municipal Land Use Law to those who "show that [their] 'right to use, acquire, or enjoy property is or may be affected' by the action").

13

We therefore look to the text of the FPA to see how it framed standing for the causes of action it created.

2.

The FPA is different from other statutes in that its explicit purpose is "to define the relationship and responsibilities of franchisors and franchisees in connection with franchise arrangements and to protect franchisees from unreasonable termination by franchisors that may result from a disparity of bargaining power." N.J.S.A. 56:10-2. In line with the FPA's protective goals, Section 7.4(h) provides specific protections for motor vehicle franchisees and prohibits franchisors from "fail[ing] or refus[ing] to sell . . . such motor vehicles to all motor vehicle franchisees at the same price for a comparably equipped motor vehicle, on the same terms, with no differential in discount, allowance, credit or bonus, and on reasonable, good faith and non-discriminatory allocation and availability terms." Id. at -7.4(h).

Section 9 of the Act provides "a defense for a franchisor, to any action brought under [the FPA] by a franchisee, if it be shown that said franchisee has failed to substantially comply" with the terms of the franchise agreement. Id. at -9. And Section 10 provides that

> [a]ny franchisee may bring an action against its franchisor for violation of this act in the Superior Court of the State of New Jersey to recover damages sustained by reason of any violation of this act and, where

14

appropriate, shall be entitled to injunctive relief. Such franchisee, if successful, shall also be entitled to the costs of the action including but not limited to reasonable attorney's fees.

[Id. at -10 (emphases added).]

Under the FPA, a "'[f]ranchisor' means a person who grants a franchise to another person," and a "'[f]ranchisee' means a person to whom a franchise is offered or granted." Id. at -3(c) to (d). A "'[f]ranchise' means a written arrangement . . . in which a person grants to another person a license to use a trade name, trade mark, [or] service mark, . . . and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise." Id. at (a). "Person" under the FPA "means a natural person, corporation, partnership, trust, or other entity" and the majority or controlling owners of the legal entity. Id. at (b).

## C.

With those principles in mind, we turn to the issue in this case. In providing that "[a]ny franchisee may bring an action against its franchisor," id. at -10, the FPA uses specific terms that set boundaries as to who can bring an FPA action, and against whom. By using those terms, the Legislature made it evident that a cause of action arising from the FPA must be specific to the individual franchisee-franchisor relationship. In plain and unambiguous

15

language, the statute states that franchisees are the only ones who can bring actions against their franchisors for violations of the FPA.

Moreover, in drafting the statute, the Legislature rejected a broad reading of the cause of action. The FPA itself defines the term "person" more broadly than "franchisor" and "franchisee." The FPA's definition of "person" includes "a natural person, corporation, partnership, trust, or other entity," but the Legislature chose to use the word "franchisee," specifically "a person to whom a franchise is offered or granted," in stating who could bring suit. Id. at -3(b), (d); -10. It could have allowed suit by "any person," or even "any party" or "any injured party," but it chose not to do so. Instead, the statute's terms are specific and provide solely that "any franchisee" can bring an FPA action against "its franchisor." Id. at -10 (emphasis added). The use of "its" -- a possessive singular -- reinforces the purpose of the FPA as explained by the Legislature: "to define the relationship and responsibilities of franchisors and franchisees in connection with franchise arrangements." N.J.S.A. 56:10-2. "There is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose," Borough of Englewood Cliffs v. Trautner, 260 N.J. 410, 419 (2025) (quoting Fuster, 259 N.J. at 547), and we rely heavily on the Legislature's narrow expressed purpose here.

16

Applying the facts to the plain language of the statutory text, we hold that only franchisees can bring suit under the FPA. NJCAR is a trade association whose members consist of franchisee motor vehicle dealerships in New Jersey, including Lincoln dealerships. NJCAR is not itself a motor vehicle franchisee, and it therefore cannot bring suit under the FPA.

That is not to say that NJCAR is barred from seeking associational standing in bringing another claim on behalf of its members under a different law, statute, or theory of injury. Our holding is limited solely to NJCAR's ability to bring suit against a franchisor for injuries made cognizable and actionable under the FPA. The plain and unambiguous language of the statute dictates that it cannot, and it therefore lacks standing to bring suit under the FPA. But lacking standing under the FPA does not preclude NJCAR from bringing suit under some other theory.

Given our holding that NJCAR cannot bring a cause of action against Ford pursuant to the FPA, we do not reach the arguments or analyze possible factors regarding whether NJCAR satisfies any standard for associational standing. Should NJCAR bring a suit under an appropriate theory of liability, a determination about its asserted associational standing will be made in that case.

17

IV.

For the reasons stated, we reverse the Appellate Division's judgment and reinstate the trial court's order granting summary judgment to defendant.


CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PIERRE-LOUIS's opinion.